Carroll v. Carroll.

## THOMAS CARROLL V. SUSAN CARROLL AND OTHERS.

The effect of previous decisions is, that where one party sues out a writ of error, or perfects an appeal, the other may assign errors, and incorporate them in the record brought up by the plaintiff; this rule relieves the appellee, in such a case, from the necessity of giving bond.

Where the proof was that husband and wife separated in 1829, and the wife married again eight years afterwards, and there was no evidence that the former husband was living at any time after the separation, it was held that the presumption of innocence was paramount to the presumption in favor of the continuance of human life; and that the second marriage was *prima facie* valid.

Where husband and wife separated in 1829, and lived at places remote from each other, and the wife married again in 1835, and the husband in 1837, and the husband and last wife lived together, as man and wife, until his death in 1853; in a controversy between a child by the first wife and the second wife and her children, respecting the estate, it was held that the second marriage of the husband must be held valid, without proof of a divorce between the husband and first wife, notwithstanding the second wife knew of the first marriage of her husband, and that his first wife was still living, but married to a second husband.

Where the language of the will was to the effect, that as soon as all the property of the testator, real and personal, should be known and could be made available and partitioned, the same should be divided among the testator's wife and children, each to receive share and share alike of the testator's property as aforesaid, it was held that the proper construction of the will was, that the wife should receive an equal share with each of the children, in addition to her half of the community estate, although the whole estate, with an insignificant exception, perhaps, was community property.

Where the surviving wife is a legatee and executrix of her husband's will, and
    returns all the property as belonging to his estate, she is not precluded by the
    inventory, from afterwards asserting her right to one-half of the community;
    nor can she be held to have elected to take under the will, instead of under
    her right to a share of the community estate, until the estate shall have been
    settled and she shall have taken her share under the will, to the exclusion of
    her legal rights on distribution.

The terms "my wife and children," in a bequest, means all the children of the
    testator, (legitimate and legitimated, at least) whether by his present or a
    former wife; but do not include the children of his wife by a former husband.

Children born before the marriage of their parents, who afterwards intermarry,
    whether such subsequent marriage is valid or null, it would seem, are legiti-
    mated by the statute.

As a general rule, a sale of property of a deceased person, under execution from
    the District Court, against executors or administrators, is null and void; and
    it is therefore not sufficient, in support of such sale, to produce a final entry
    of judgment against such executors, execution and deed; but it must be shown
    further, that such judgment and execution were obtained under one of the Sec-
    tions of the statute, which authorize the same in special cases.

Appeal from Navarro.   Tried below before the Hon. Henry
J. Jewett.

Suit commenced December 1st, 1854, by Thomas Carroll,
against Susan Carroll, Elias Carroll, Jun., and Joseph Carroll,
executors of Nathaniel H. Carroll, deceased, to set aside the will
of said Nathaniel, on the ground that the testator was not of
sound mind when he executed it; and in the event said will
should be set aside, to establish plaintiff's right as sole heir of
the estate of said Nathaniel; and in the event said will should
be sustained, to obtain a construction thereof; and against Berry
L. Ham, to recover a slave Dick, and lots No. 1, 2 and 9 in
block No. 12 in the town of Corsicana, the property of said
estate, of which it was alleged said Ham had become unlawfully
possessed; and it was also alleged that said executors had caused
certain property of said estate, to wit: slaves Dick and Moses,
a mule, and a wagon and yoke of steers, to be inventoried as the
separate property of said Susan Carroll, whereas this petitioner
alleges that said property was the separate property of said Na-
thaniel, deceased.   Prayer, &c.

Defendants admitted the will, as alleged, and their possession
of the property, as alleged, as shown by the inventory filed by
them as executors.   The inventory embraced all the estate.   All

the children of the deceased testator were made defendants. The will was as follows:—

THE STATE OF TEXAS, *County of Navarro*.

I, Nathaniel H. Carroll, of the county and State aforesaid, being of sound mind and memory, but considering the uncertainty of my earthly existence, do, by this my last will and testament, make, ordain, publish and declare :—

First, that is to say after all my just debts are paid and discharged, I give, bequeath, devise and dispose of all my real and personal estate as follows. And first, it is my express wish and desire that the County Court for the settlement of the estates of deceased persons of the county of Navarro, or of any other county in the State of Texas where this my will shall be probated, shall not have any control or management of my estate, further than that of returning an inventory of my estate, and that no security whatever shall be exacted or required by the County Court of my executors, hereinafter named, for the safe management and conduct of my estate.

Second. It is my wish that all the real and personal estate which may be belonging to me at the time of my death, be the same lands, cattle, horses, book debts, notes or claims of any kind, be collected together by my executors, hereinafter named, as soon as they can, and after all my property, as aforesaid, is known, and the same can be made available and partitioned, I order that the same shall be divided among my wife and children, each to receive share and share alike of all my property as aforesaid ; and I hereby nominate and appoint Susan Carroll, my wife, Elias Carroll, Junior, Joseph Carroll and Jesse Ammond executors of this my last will and testament, to carry into effect my instructions as expressed aforesaid in this my last will and testament.

Defendant Ham answered, denying that he had possession of any of the property of said estate, except lots No. 1, 2 and 9 in block No. 12 in the town of Corsicana, which said defendant claimed by deed of conveyance executed and delivered to him on the 7th of August, 1854, by James B. Berry, as Sheriff of Navarro county aforesaid; which deed was filed as part of said answer. This defendant admitted that he had possession of the slave Dick, under authority of Susan Carroll, from the 25th day of January, 1854, to the 15th of March, 1855, when he surrendered said slave to said Susan. Said deed recited a judgment

in favor of one Hampton McKinney, against said executors, with an order for the sale of that particular property, &c.

Elizabeth Haley filed a disclaimer of all interest in said estate. She was a witness for plaintiff. At Fall Term, 1856, trial, special verdict and judgment as follows:—

This cause coming on to be heard upon the petition and answers of defendants, and after hearing the evidence in the case, the Court directed the several issues, as herein stated, to be submitted to the jury.

1st. Is Thomas Carroll, the plaintiff in this case, the legitimate son of Nathaniel H. Carroll, or not?

2d. Was Nathaniel H. Carroll ever married to the defendant Susan Carroll? and if so, when and where? And if married, can you or can you not find from the evidence whether the said Susan had any knowledge of any previous marriage of Nathaniel H. Carroll with one Elizabeth Lindsey? And further, did said Susan Carroll have any knowledge that said Elizabeth Lindsey was alive from 1829 to 1836?

3d. Did the said Nathaniel H. Carroll, as the head of a family, obtain a certificate or grant from the Republic of Texas for land? and if so, when was it, and who composed his family?

4th. Did said Elizabeth, as the head of a family, ever receive a certificate or grant from the Republic of Texas for land? and if so, when was it, and in whose name, and who composed the family?

5th. Did said Elizabeth marry Mark Haley? and if so, when and where?

6th. Did Nat. H. Carroll and said Susan have any children by each other before their marriage? and if so, how many, if any, and their name or names?

7th. Was the defendant Elias Carroll born during or before the marriage of N. H. Carroll and said Susan? If he was born before the marriage, was he afterwards and during said marriage recognized by said Nathaniel H. Carroll as his child? or how did he treat him, and on what footing was he in the family? And is Elias by birth the son of Nath. H. Carroll, or whose son is he?

8th. Did Nathaniel H. Carroll have any children by said Susan Carroll after their marriage? If so, their names? And say how many are living now, how many are dead, and can you find from the evidence that those who have died left any children?

9th. How was the property of which Nath. H. Carroll died

possessed obtained?   Can you find from the evidence whether it was acquired by him after the reputed marriage with Susan Carroll?  and if so, state and describe the property and its value as nearly as you can determine from the evidence.

10th.  The jury will find, from the evidence, whether B. L. Ham purchased the tavern stand under an order of the District Court; and if so, when; and state what it is reasonably worth, and what its annual rent is reasonably worth.

11th.  The jury will find, if they can, from the evidence, on what terms and for what purpose B. L. Ham received the negro from the estate, and if he has restored him.   When and to whom was it done, and for what purpose?  State the value of the negro, and what his monthly hire would be reasonably worth.

Whereupon the jury, consisting of twelve good and lawful men, to wit:  James M. Dixon and eleven others, who, being duly elected, empanelled and sworn, and after hearing the evidence and argument of counsel, and receiving the charge of the Court, retired to consider of their verdict; and after due deliberation thereon, returned into open Court the following verdict, to wit:—

We decide, in answer to No. 1.   He is.

Answer to No. 2.   He was; in Jasper county, Texas, in the year 1837.   From the evidence we cannot.   She had not.

Answer to 3d.   He did; in the year 1838; his wife Susan Carroll, and Elias, Elizabeth, Joseph, Harriet Jane.

Answer to 4th.   She did; in the year 1838, February 20th, in the name of Elizabeth Carroll.   From the evidence we cannot tell who composed the family.

Answer to 5th.   She did; in the year 1835, September 22d, in Shelby county, Texas.

Answer to 6th.   They had three children: Joseph, Harriet and Elizabeth.

Answer to 7th.   He was born before the marriage.   Nat. H. Carroll did not acknowledge him as a child of his, but treated him as such in the family, and intended him to be an heir of his. Elias is not the son of Nat. H. Carroll, but the son of Sanders.

Answer to 8th.   He did; four.   Jane, Nathaniel, Samuel and Mary.   Mary is the only one living at this time.   Three dead. Those three left or had no heirs.

Answer to 9th.   The property was acquired by Nat. H. Carroll and his family—Susan Carroll and her children—except the five hundred dollars ($500) inherited by Nat. H. from his father's

estate, and one hundred and fifty dollars personal property, ($150.)

Property after marriage: 320 acres land on Aquilla creek, part H. R. of Wm. Ward, value $1, $320; 320 acres land, H. R. of Evan Roberts, same creek and Hill county, Texas, $320; 160 acres land, part H. R. John Ward, on same creek and county, $160; 160 acres land, part of H. R. Benj. Roberts, on same creek and county, $160; 320 acres of land, H. R. John Barkley, situated on Brazos river, (tax title,) $10; 47½ acres land, part H. R. Jesus Ortez, in Navarro county, $475; 840 acres land, part of the Harper 1280 acres, in Navarro county, near Trinity river, $1,680; one negro boy named Harrison, value $400; one negro woman named Cresy, value $550; one negro man named Dick, value $850; one negro man named Moses, value $1,100; one mule, $100; one yoke oxen and wagon, $110; lots Nos. 1, 2 and 9 in block 12, and appurtenances, house, tavern, value $1,800.

Answer to 10th. He did, on 7th August, 1855, and we decide it worth $1,800; and the rent per annum $300.

Answer to 11th. We cannot find on what terms or for what purpose B. L. Ham came in possession of the negro from the estate of N. H. Carroll, but Ham returned the negro to Susan Carroll, on 15th March, 1855; for what purpose we don't know. Value of negro, $850; hire per month, $16.

(Signed)            JAMES M. DIXON, Foreman.

It is thereupon considered by the Court, adjudged and decreed, that Thomas Carroll, the plaintiff in this cause, is a lawful heir of Nathaniel H. Carroll, deceased, and that he is entitled to take an equal share of the property of N. H. Carroll, deceased, with his other heirs; and the Court having considered all the evidence in this case, and especially the inventory of the property of N. H. Carroll, deceased, as herein filed, it is adjudged and decreed, that the said Susan Carroll is estopped and bound by her said inventory, as having elected to take, according to the terms of the same, and under the terms of the will.

And it is further ordered by the Court, according to the verdict of the jury, that said Susan Carroll, and Mary Carroll, Harriet and Joseph Carroll, now deceased, and Elias Carroll, were, at the death of said Nat. H. Carroll, his heirs, and were entitled, according to the intent and meaning of his said will, as made appear to the Court by the evidence in this cause, to receive share

and share alike of said estate, according to his intention, as expressed and construed by the Court in said will. It is therefore considered that the estate of which the said N. H. Carroll died possessed, the proceeds, rents, profits, issues of the same, be .divided into six equal parts, to be allotted to each of the aforesaid heirs respectively, to wit: Susan Carroll, Elias Carroll, Joseph Carroll, Harriet Owens, Mary Carroll, Thomas Carroll. And the Court having considered the answers of B. L. Ham, and the verdict of the jury responsive to the same, it is therefore ordered by the Court, adjudged and decreed, inasmuch as negro man Dick, as returned in the inventory by said Susan Carroll to the Probate Court, and it having been recorded and approved thereby as her separate and sole property, that he be discharged fully from this Court from any accountability on account of possession as herein of said negro in any manner whatever. It is further ordered by the Court, that said Ham report to the auditor, hereafter to be appointed, what he paid, in money or otherwise, for the tavern stand, and when paid, and to whom, and also what amount he may have paid for rent, and to whom, before he purchased the same at Sheriff's sale. It is further ordered by the Court, that C. M. Winkler be appointed auditor in this cause, and that the said defendant Susan Carroll, executrix, and said Elias Carroll, executor of· N. H. Carroll, deceased, shall report to said auditor, under oath, at such time as he may require, how they have executed the trust reposed in them by the will; and what debts they have paid, if any; and how they have divided the property of said estate as inventoried by them, and the proceeds thereof, if any; if any division has been made, and especially what disposition has been made of the negroes Moses, Cresy and Harrison, and who has been or is now receiving the benefit of their labor; and that said auditor shall state, as far as he may be able from the reports of said executors, the amounts that may be due the said Thomas Carroll and the other heirs respectively, according to the tenor of this decree.

It is further ordered, that the plaintiff have and recover of the defendants all cost of this cause hereinbefore accrued, for which let execution issue. It is made known to the Court, by consent of parties, that the issue suggested by plaintiff, as to the sanity of said testator N. H. Carroll, be waived, and that the will be permitted to stand, both parties claiming under the same and the proper construction thereof.

47

Motions for new trial, by both parties, overruled; notice of appeal by both parties; appeal bond by plaintiff only; assignments of error filed in the Court below by both parties.

The assignment of errors, by Thomas Carroll, the plaintiff below, was as follows:—

1st. The Court erred in allowing the testimony of Wallace E. Oakes, referred to in plaintiff's bill of exceptions, for the purpose of explaining what the testator, Nat. H. Carroll, deceased, meant by the term " children" in his will, which is hereby referred to.

2d. The Court erred in decreeing the negroes Dick or Richard and Moses to be the separate property of said Susan Carroll.

3d. The Court erred in recognizing and permitting Harriet and Joseph, born before the marriage of their parents, whoever they were, to come in as devisees under said will, under the term children.

4th. The Court erred in recognizing Elias as a devisee, under said will, under the term " children," when he was proven to be the son of Susan Carroll, formerly Susan Sanders, by her former husband, Sanders.

5th. The Court erred in recognizing Mary as a devisee under said will.

6th. The Court erred in recognizing Susan Carroll (formerly Susan Sanders) as the lawful wife of Nat. H. Carroll, deceased, at his death.

7th. The Court erred in determining issues of fact without consent of plaintiff.

8th. The Court erred in allowing the Sheriff's deed to B. L. Ham, of lots Nos. 1, 2 and 9 in block 12, to be introduced as evidence.    Bill of exceptions of plaintiff hereby referred to.

9th. The Court erred in permitting the judgment under which the execution issued, by virtue of which the said tavern stand or lots were sold to said Ham, without an allegation in said defendant's pleadings that such a judgment ever existed.

10th. The Court erred in sustaining the sale of said tavern stand or lots under said execution.

11th. The Court erred in discharging said Ham from accounting to the plaintiff in this suit for the negro Moses, or his value and his hire.

12th. The Court erred in allowing said Susan and five persons to inherit as devisees under said will, under the terms wife and children.

13th. The Court erred in recognizing children born out of

marriage, and subsequent to the birth of Thomas Carroll, and a child of Mr. and Mrs. Sanders, as joint devisees under said will.

14th. The Court erred in disregarding the effect of the issues found by the jury in this cause, and in not making the judgment of the Court responsive under the law to said issues.

15th. The Court erred in overruling plaintiff's motion for new trial.

16th. The Court erred in various other rulings, charges and proceedings apparent on the record of this cause.

The assignment of errors by two of the defendants below was as follows :—

1st. The Court erred in decreeing that Susan Carroll was only entitled to an equal share with each child or heir, and deciding that she had elected under the will to surrender her half of the community property.

2d. Because the Court erred in not decreeing to Susan Carroll, surviving widow, one-half of the common property after the payment of all debts, and also an equal share, or "share and share alike," with the children of Susan, of the testator's half of said property.

3d. Because the Court erred in decreeing that Thomas Carroll was a legal heir of said testator, and entitled to take an equal share with the other heirs of said testator.

4th. Because the Court erred in admitting the testimony of Elizabeth Haley.

5th. Because the Court erred in excluding the testimony of W. E. Oakes in answer to 8th direct interrogatory.

6th. Because the Court overruled defendants' motion for a new trial.

The statement of facts and bills of exceptions are not of sufficient importance, in view of the points upon which the case was disposed of in this Court, to justify their insertion here.


*William Croft*, for appellant.

*R. Q. Mills* and *G. F. Moore*, for appellees. (The Reporters regret, that owing to the length of the able arguments for both appellant and appellees in this case, they are compelled to omit them.)

HEMPHILL, CH. J.  I will consider the prominent points of this controversy, without regard to the order of assignments of error, by either plaintiff or defendants.  Both parties—that is the plaintiff and two of the defendants—have appealed; but the plaintiff alone has given bond, and contends that the defendants should not be heard on their assignments, except so far as they may conflict with those filed by the plaintiff.  This seems plausible, and in practice would be worthy of observance; but the effect of previous decisions of this Court, especially in the case of Caperton v. Wanslow, 18 Texas, is, that where one party sues out a writ of error or perfects an appeal, the other may assign errors and incorporate them in the record brought up by the plaintiff.  This rule relieved the defendants, or appellees, from the necessity of giving bond; and their failure to do so was the result, doubtless, of the effect attributed by them to the decision.

The first question I shall examine is, whether the defendant Susan Carroll, the wife of the deceased Nathaniel H. Carroll, was entitled to a community share of the property left by him at his death.  If she were in fact his wife, she was invested by law with the one-half of the clear gains made during the marriage. The proof is clear and abundant, that the parties, in the year 1837, intermarried in Jasper county, with all the formalities and ceremonies prescribed by the statute; and that they subsequently lived together as man and wife, and as such were recognized by the community in which they lived, until the death of the husband Nathaniel, in 1853.

But it is said that the defendant Susan was not the lawful wife of the deceased, for the reason that at the time of their marriage, her former husband, Jabez Saunders, was still alive. A sufficient answer to this objection is, that she and her former husband separated in the year 1829, and there is no evidence in the record, of his existence since that date.  She did not enter upon the second marriage, until eight years after the separation; and as the presumption of law is in favor of innocence, it would, after so great a lapse of time, be inferred that her husband was dead, and that there was no legal disability against the second marriage.  Under the Act of 1836 for punishing crimes and misdemeanors, in force at the time of this marriage, the defendant could not have been convicted of bigamy, under the exemption extending to husband and wife ignorant that one or the other was living within five years previous to the second marriage; and certainly a more rigorous construction would not be

given to the law, where the question is merely one of property, than would be where the act was stigmatized as criminal.

A question similar to the one arising in this cause, was considered at some length in Yates v. Houston, 3 Tex. R. 433; and it was held in effect, that where there was no evidence of the existence of the first wife, for four years prior to the second marriage, the presumption was that she was dead, and that the second marriage, or supposed second marriage, in that case, was lawful, and conferred on the wife a community right in property; that the presumption in favor of the continuance of human life, should not outweigh the presumption of the innocence of cohabitation, and that this doctrine, in a case cited from 2 B. and Ald. 386, went to the extent of raising a presumption that a woman married within twelve months after her husband left the country, was innocent of bigamy; the presumption of innocence being held to preponderate over that of the continuance of the life of the husband. For further views, with reference to this point, we refer to the case cited from 3 Texas, there being such analogy between the facts, in the two causes, as to give to the doctrine there expressed, special force on the point under consideration.

The same preponderating effect of the presumption of innocence, over the presumption of the continuance of human life, was allowed in the case of Lockhart v. White and Others, 18 Tex. R. 102, where five years had intervened between the separation of husband and wife prior to the second marriage, and where the existence of the husband, within twelve months prior to that event, was not known.

Under these views and authorities, we may conclude that the prior marriage of the defendant Susan was no legal bar to her second marriage, and that by virtue thereof she became the lawful wife of the deceased.

But it is further objected, that the deceased Nathaniel had a wife living at the time of his marriage with the defendant Susan, and that this was within the knowledge of the defendant. But the proof is, that the deceased had also been separated from his wife for about eight years, and that his wife Elizabeth had married again in 1835, more than two years prior to the marriage between the defendant Susan and the deceased Nathaniel. There was no evidence that the first wife of the deceased had obtained a divorce prior to her second marriage. But the law in favor of innocence raises such presumption. And the defendant Susan,

if she knew of the existence of the first wife, might have acted on this presumption, in contracting the marriage relation with Mr. Carroll. The parties—that is the first wife and the deceased—appear to have lived, after the separation in 1829, at places remote from each other; and at the marriage of the defendant with the deceased in 1837, it appears not to have been known to their neighbors, that either of them had been previously married. In Smith v. Smith, 1 Texas, such presumption was held available to the second wife. She, in that case, knew nothing of the existence of the first wife, until after the marriage of the latter with another husband, and as, under the principles of the laws of Spain, the cohabitation of the second wife with her putative husband was, prior to this discovery of his previous marriage, lawful, it continued as such subsequently, from the fact that the first wife had married the second time; this latter marriage being presumed (there being no proof to the contrary) to have been after divorce and legal and valid. The laws of Spain were in force in Texas until 1840, and the defendant Susan has the right to claim all the aid from them, which, under the facts of this case, they may afford. She did not marry until two years subsequent to the second marriage of the first wife of the deceased. She and her husband lived as man and wife for sixteen years, up to the time of his decease. They were recognized as such by the community. No attempt was made to impeach or disturb their marriage relation, and we may safely conclude, after this lapse of time and under the circumstances, that the defendant was the lawful wife of the deceased, and that there existed no legal impediment to their marriage.

The first wife of the deceased has no claim on the community. If her marriage with Mr. Haley be valid (and this is the presumption) she cannot claim the benefit of two marriage partnerships existing at the same time. If, on the other hand, her marriage be unlawful, her condition would operate a forfeiture of community right with the deceased. (Wheat v. Owens, 15 Tex. R. 241.) She has also renounced all claim on the estate, and the right of the defendant Susan is not embarrassed by any pretensions of the previous wife of her deceased husband.

I have not considered the strong claim which the defendant Susan, independently of her rights as a lawful wife, might have urged to a community share of the property. She was his wife *de facto*. By her labors and toils she contributed to the accumulation of the estate. At the time of their marriage they were

in a state of indigence; the property not amounting to more than one hundred and fifty dollars. Their gains were the result of their joint industry, thrift and economy, and she is reasonably entitled to a share of the proceeds.

These considerations, though just and potent, need not be invoked by the defendant, as she does not require their aid; being, under the evidence, entitled to claim her community interest, as the lawful wife of the deceased.

The next question is, whether she, being thus entitled, has forfeited her rights, being estopped (as decreed by the Court below) by the inventory? "she having elected (in the language of the decree) to take according to the terms of the same and under the terms of the will."

Before considering the effect of the inventory, upon the rights of the defendant, we will examine the terms of the will, to ascertain whether it was the intention of the testator that the defendant Susan should be put to the election of either insisting upon her community share, or of taking the bequest under the will. And it may be observed, that the right of the wife, to one-half of the property acquired during marriage, is equivalent to the right of the husband, to the other half. The difference is, that during the life of the husband, her right is passive, his is active and gives him the control and disposition of the property, without power, however, to act in fraud of the rights of the wife. On the death of the husband, she acquired the active, as she had before the passive dominion over her share of the acquisitions. Is there anything in the language of the will, which denotes an intention to bequeath, not only the property of the testator, but also that of the wife? The terms are, "I devise all my real and personal estate," "It is my wish that all the real and personal estate, which may be belonging to me at the time of my death, be the same lands," &c.; and, "As soon as all my property, as aforesaid, is known and the same can be made available and partitioned, I order that the same shall be divided among my wife and children, each to receive share and share alike of my property as aforesaid."

What is the meaning of this language? Evidently that the testator is devising his own property, and not that of his wife or others who might have common interests with him in some of his lands or other estate. We derive our system of community rights from the laws of Spain; and had this will been framed under that Code, it could not have been pretended that

the widow was put to the election of renouncing either the community or the bequest. The power of the husband to dispose of the common property, during his life, did not authorize him to bequeath that portion of it which was not his own. Hence a legacy or bequest to her, in his will, was to be received by her exclusive of, and in addition to, her gananciales. (16th Law of Toro, L. 8, Tit. 4, lib. 10, Nov. Recop. ; Schmidt's Civil Law, p. 14 ; White's Recop. p. 63.)

The estate of the widow, in dower at Common Law, is somewhat analogous to that of the wife, under our system, in the community gains ; and the rule is well established, that the widow cannot be excluded from her dower, unless the intention to exclude her appear by express words or manifest implication from the terms of the will. This rule has been the subject of frequent discussion and decision, and the authorities on the subject are collected and reviewed in numerous cases. Among these are Hall v. Hall, 2 McCord's Chan. R. 269; 8 Paige, 323; Adsit v. Adsit, 2 Johns. Chan. 448 ; Wake v. Wake, 1 Vesey, Jr. Sumers. Ed. 335; 2 Story, Eq. Juris. § 1075 to 1123; Bouvier's Dic. ELECTION ; Meigs's Tenn. R. 378; 3 Bro. C. C. 347.

The cases of election are where the wife claims something under the will, which will disappoint the will. But will the acceptance by her, of the bequest, frustrate the intention of the testator ? Every bequest imports a bounty, and is not, unconnected with other circumstances, to be taken as a satisfaction of a pre-existing incumbrance. A bequest to the wife is a voluntary gift, and does not ordinarily affect her legal right. (2 J. C. R. 452.)

We are of opinion that the terms of the will do not manifest an intention to exclude the widow from her community rights, or put her to an election between that and the bequest under the will.

Nor is she precluded by the fact that the inventory represents the property as belonging to the estate of the deceased. From the face of the inventory we cannot infer upon what view the executors acted, in representing the great bulk of the property as belonging to the estate of the deceased. It seems, however, that they had some notion that there were such rights as separate and common property of the partners, as they represent two of the negroes to be the separate property of the deceased,

and the other two to belong separately to the wife, and also that there were one wagon and one yoke of steers common property.

Now, from the evidence in this cause, if there be any portion the separate property of the deceased, it is the wagon and yoke of oxen; as it seems that he had a wagon, a yoke of steers and a small horse at the time of his marriage. But, by the statute, the inventory is not conclusive as to whether the property was separate or common, as specified. (Hart. Dig. Art. 1151.) Nor is she concluded, on general principles, until the settlement of the estate, and she receive her share, to the exclusion of her legal rights on distribution. (Hall v. Hall, 2 McCord, Chan. R. 280.) In Wake v. Wake, 1 Vesey, 335, it was held that the receipt, by the widow, of a legacy and annuity, for three years, did not prevent her from the right of electing her dower, as she was presumed not to act on such full knowledge as would bind her.

The statute directs executors, &c., to specify in the inventories whether the property be separate or common, but this is frequently omitted; and if it does not bind an ordinary executor, for the more reason should it be held not conclusive on the widow, acting as executrix, who may well be presumed not to act on full knowledge.

We are of opinion that there was error in the decree of the Court below, excluding the widow from her community share in the estate.

The next question is as to the persons who were the objects of the testator's bounty, under his will. Who are meant by the terms "my wife and children?" Unquestionably, his wife Susan (whom he afterwards names as his executrix,) was intended by the designation "my wife." But who are the children? It seems clear that he intended his own children. The words my wife and children convey exactly the same idea to the mind, as if the language was my wife and my children, and not the meaning of the words my wife and her children. We are of opinion that Elias Carroll, who was not a child of the deceased, was not embraced in the will, and there was error in regarding him as one of the devisees of the estate.

We are of opinion that the plaintiff Thomas was included under the terms " children," and that he is entitled to a share of the property of the deceased; and that all the children of the defendant, Susan Carroll, had by the deceased, whether born before or after their marriage, and who were alive at his death,

are included and are devisees under the will. It might be questioned whether the term "children" would generally embrace illegitimate as well as legitimate issue. But the point is not material in this case. The issue of the defendant and the deceased, begotten before, were legitimated by the subsequent marriage of the parents. (Hart. Dig. Art. 2447, 2451.) And if this marriage were invalid, and the connection adulterous, as contended for by the appellant, the rights of the issue would not be affected; they by another provision being legitimate notwithstanding the nullity of the marriage. The terms of the Acts of 1840 and 1848, above cited, are that the issue in marriage, deemed null in law, shall nevertheless be legitimate. These provisions are found in statutes regulating the descent and distribution of property, and apply to all marriages, whether celebrated before or after the passage of the law or laws, provided the parent died after their passage. The right of the issue, to the property, does not commence until after the death of the ancestor, and must be determined by the laws then in force. The Act of 1848 fixes legitimacy, and its rights, upon all the children of the deceased, whether the marriage be or be not null and void. Such is the construction elsewhere, on similar provisions. (3 Henning & Mumford, 225; 5 Call, 439; 2 Grattan, 203; Lincecum v. Lincecum, 3 Missouri.)

We come now to consider the right of the defendant Ham, to the property held by him under Sheriff's sale. The evidence on this branch of the cause is obscure. The proceedings in the cause in which execution was issued, were not in evidence. The judgment alone was offered, and this is not, nor is the execution, transcribed in the record. From the recitals in the Sheriff's deed, it would seem that the judgment was against the executors, and that it directed the sale of the lots in question. But, without further evidence, this sale must be pronounced void.

As a general rule, debts against estates can be enforced only by process from the County Courts. There is an exception, under facts presented in this case; the testator directing that no other action should be had in the County Court, except the probate and registration of the will and return of an inventory. (Hart. Dig. Art. 1219.) This article is too long to be transcribed. It prescribes a mode of proceeding, which must be pursued in such cases, and which was not followed in the recovery of judgment against the executors. There is no evidence of previous citation to the devisees, of their giving or failure to

give bond, or, in fact, that there was any observance of the requisites of the statute. (Hogue v. Sims, 9 Tex. R. 546.) If the plaintiff in execution holds a mortgage on these lots, even then, in ordinary cases, he should apply for process from the County Court to enforce satisfaction. The sale must, under the evidence, be pronounced void, and that the estate has not been divested of title. The fact that Mr. Ham returned the slave Dick to Susan Carroll, the executrix, will relieve him from further responsibility in relation to said slaves.

The judgment of the District Court is reversed, and the cause is remanded to that Court, with directions to enter a decree establishing the right of the defendant Susan Carroll to a community share of said estate, and also her right and that of the other devisees, to a distributive share of the estate of the deceased according to the terms of the will and the directions of this Opinion, and that such further action be taken as may be required for the adjustment and settlement of the estate and the division of the same.

Reversed and reformed.