HARRISON WELLS ET AL. V. PETER PETREE ET AL.

1. A will taking effect by the death of the testator in 1848, and disposing of the community property, part to his children and a part to the widow, with power to her to sell her share if necessary for the maintenance of the minor children, while it could have been defeated by the widow, yet upon her assenting to it, and taking her share under its provisions, became binding against all claiming under her.
2. The husband by his will has the right to and can compel an election by the widow to take under the will or against it under the laws.
3. The widow taking under such will was bound by its provisions, and had no right to sell her share, except under the conditions prescribed in the will.
4. The will giving only the power to sell for maintenance of the minor children, a sale not required or made for such purpose conveyed no title, and lands so conveyed without authority, on her death, could be recovered by the heirs of testator.

APPEAL from Walker.  Tried below before the Hon.
J. R. Burnett.

*L. A. Abercrombie*, for appellants, cited Story's Eq.,
1075, 1078, 1086, 1088, 1096; 2 Redfield on Wills, 737,
739, 749, 753; Carroll v. Carroll, 20 Texas, 740; 1 Johns.,
306, Harrabee v. Van Alstyne; 30 Texas, 566, Portis v.
Hill; 27 Texas, 173, Paschal v. Acklin; Hawkins on
Wills, 272; 21 Eng. Ch. Rep., 23, Holdich v. Holdich;
4 Johns. Ch., 8, Smith v. Kinskem; 1 Jarman on Wills,
282, 383; 2 Ves., Jr., 572, French v. Davis.

*Baker & Maxey*, for appellees.—1. Had Cook, the tes-
tator, the power under the law to dispose of his whole
estate by will?  2. Did his wife elect to take under the
will and thereby estop herself from disposing of portions
of her community in the land?  These are the issues
presented by the pleadings.

I. In the first place we affirm, in support of the judg-
ment of the court below, that at the time Cook's will took
effect he could not dispose of more than one-fourth of the
land of which he died seized and possessed, because such
was the law in force at the time.  The will is valid as to
the disposable part, and inoperative and void as to that
part, under the law, he could not dispose of by last will
and testament.  The real estate consisted of his headright
league and some other lands acquired during the mar-
riage, and was community property.  She held one-half
by the same tenor that the testator held the other half.
The only difference between them was as to the power of
disposition during coveture.  During the life of both the
husband had the power of disposition, but that right
ceased at his death.  The disposable part of his estate
passed by his will.  As to the balance the title remained
where the law placed it—one-half the community in the

wife. The will as to her interest was inoperative and void for two reasons: 1. Because he undertook to dispose of more of his own estate than he was authorized by law. 2. Because he undertook to defeat the right and title of the wife. The will may be good in part and bad in part. As to the disposable portion it will be held to be valid, while as to the undisposable portion it will be held to be invalid. (Parker v. Parker, 10 Texas, 83 ; Charle v. Saffold, 13 Texas, 94 ; Walker v. Howard, 34 Texas, 378.)

We borrowed our law of marital rights from the civil law of Spain and Mexico, and by that law the testator had no power over property not his own by last will and testament. (Smith's Civil Law, p. 14, Art. 52 ; Carroll v. Carroll, 20 Texas, 731.)

Such was the law in force in this State until the act of twenty-fourth of July, 1856. Cook having died before the passage of this act, his will was inoperative as to his real estate except as to the disposable portion, one-fourth. (Haggerty v. Haggerty, 12 Texas, 456.)

Here the testator attempted to dispose of the whole of the landed estate of himself and wife of about 4600 acres, leaving about eighteen hundred acres to the wife as a life-estate. The testator has not only attempted to give a life-estate in lands to his wife which was already hers by title created by law, but has disposed of largely over one-half the community, and has attempted to give to her, in what was left, a less estate than she was already possessed of under the law. This view of the case, to say the least of it, does not present such equities as would arrest the attention of a court of equity, much less commend them to a favorable consideration.

II. It is contended by appellants that the widow and those claiming under her by purchase are estopped from setting up community rights against and independent of the will, because, they say, she elected to take under the

will, and by this she is bound. This brings us to the discussion of the other leading issue presented by the record, to-wit, the doctrine of election. Having derived our law of marital rights from the civil and not the common law, it is questionable whether the doctrine of election, as understood in common law States, is applicable to our system of laws. In the case of Carroll v. Carroll, 20 Texas, 731, it was decided, under a will where it seems from the words employed that the testator undertook to dispose of all his estate, without regard to the community rights of the wife, using the words "all my property," that the testator must be understood as disposing of his own property and not that of his wife ; and having derived our system of marital rights from the civil law, the widow could not be put to an election of renouncing either the community or the bequest; and that the power of the husband to dispose of the community property during life did not authorize him to bequeath that portion of it which was not his own. If the doctrine of that case be applied to this it is decisive, because in Cook's will he makes the bequest to his wife in lieu of any claim she may have upon his estate. Yet the court will confine the will to such estate as was his, and such as was disposable by last will and testament ; and with the limitation that he could dispose of his own and not his wife's estate the rule would be the same. (Carroll v. Carroll, *supra;* 1 Jar. on Wills, 380 ; 1 Red. on Wills, 750 ; Hawes v. Sackett, 15 N. Y., 365 ; Church v. Bull, 2 Denio, 430.)

At common law only those are required to elect who take a beneficial interest under the will. In that case they must elect to take under the will or against its provisions. (1 Red. on Wills, 737; 1 Jarman, 374.)

It will be seen by an examination of the reported cases and of the text writers that the interest in a devise which

would require an election is a beneficial interest. (Bigelow on Estoppel, 578.)   What beneficial interest did Mrs. Cook take under her husband's will?   What interest was it to her that her husband willed her a life-estate in less than one-half of that which was already hers?   Where a testator gives a benefit in lieu of dower, he purchases an interest in the estate for the benefit of those claiming under the will.   In this case, where is the *quid pro quo?* What was here purchased of Mrs. Cook, and what was given for it that would add anything to the disposable power of the testator?   Who are the legatees to be benefited by it?   It was certainly not her interest to take a life-estate in much less than one-half of what was already hers.   It cannot be seriously argued that the husband's testamentary power extended to the whole community estate.   If then the testator Cook attempted to do by will that which it was incompetent for heirs to do, the will as to Mrs. Cook's interest is void; and if valid, the interest devised to her not being a beneficial interest, she could not be required to make an election; and if not required to make an election, then the doctrine of election does not apply.

The analogies of the English law are apposite, and we will refer to some of them in support of the judgment of the court below.   A *femme covert* having testamentary powers makes an appointment by will in favor of the husband, and by the same attempted to bequeath to another personal estate to which her testamentary power did not extend, would the husband be put to an election to take the real estate to which her testamentary power extended and renounce the personal estate to which her power did not extend?   Certainly not, because he may take the bequest of the land and defeat the bequest of the personal estate by virtue of his marital rights, for the personal property of the wife reduced to possession was already

his by right of absolute ownership. (1 Jar. on Wills, 377.) And so here where the husband undertakes to dispose of the community or a moiety of it, the wife might take a special legacy, if such a provision were made, and at the same time set up her right to her half of the community by virtue of her marital rights.

Looking further into the analogies of the law of other States, it has been decided that if the husband devise estates which the wife had not surrendered, she could not be put to an election, because it is presumed to be the intention of the testator to give what strictly belonged to him; and upon the wife failing to make the surrender by which her estate would be merged in his, he had no such testamentary power over it as would compel the wife to elect under the will; and, *a fortiori*, could she not be put to an election under the will now before the court, where the testator attempted to appoint to her a life-estate in lands, which were hers by reason of her marital rights by absolute title? (1 Jar. on Wills, 377; 1 Red. on Wills, 743, 745.)

Again, take the case of an infant who has no testamentary power over real estate; his attempted disposition of it will not compel one receiving a benefit under it, of personalty, to make an election or abandon such real estate against which he has a claim; and the same doctrine applies to coverture. It has been decided that the gift of a portion of the real estate to the widow for life will not be sufficient to put her to an election. (1 Red. on Wills, 738.) It is further submitted that it is only in cases where the devisee takes under the will, and also sets up rights independent of the will, which would defeat some other disposition, the doctrine of election can be enforced. (1 Jarman, 383, and note on page 382; Smith v. Kingston, 4 Johns. Ch. R., 8; Adsit v. Adsit, 2 Johns. Ch. R., 448.)

Here the sales of portions of the estate appointed to her were made in accordance with the will, and could not under this view make an election obligatory upon her, because she was acting under its provisions, and in doing so could not defeat the disposition made under it. Besides under the will it was necessary for the appellants to aver and prove that the contingency contemplated by the will, which authorized Mrs. Cook to sell the estate appointed to her under the will, did not arise, which they have failed to do; otherwise the presumption arises that she acted within the scope of her authority—that is that the contingency did arise which justified her in selling; and this presumption is strengthened by the proof in the case.

Mrs. Cook having asserted her right over the property bequeathed to her (supposing the will to be valid) as to her interest, and she was put to her election, her action in the sales made did not necessarily defeat the provisions of the will, because she had the right under the will to sell the land for her support and for the support and education of her minor children, and the residue of the estate undisposed of by her went to the remainder-men, who were the testator's heirs and also her heirs, and this was all that they had a right to expect under the will.

Again, the proof fails to show that if she was put to an election she acted under a full knowledge of what her rights were. This was necessary to bind her, and if made under a mistake, misapprehension or ignorance, it will not be valid and binding, and any person having made an election without full knowledge will be entitled to elect again. (1 Red. on Wills, 748.) Neither the testator nor his wife knew that at the time he made his will he could dispose of only one-fourth of his estate. The parties acted in ignorance of their rights and powers, and the subsequent acts of Mrs. Cook in conveying and receiving

the purchase money (as the deeds in proof show) evince that she was exercising a legal right.

In any view that may be taken of the case, upon either issue presented by the pleadings, it is believed that the judgment of the court below ought to be affirmed.

WALKER, J.—William A. Cook, of the county of Walker, made his last will, and died in 1848, leaving Nancy Cook, his surviving widow, and a numerous family of children, at least three of whom were minors at their father's death; two of whom were married—Nancy to the plaintiff Wells, and Missouri to the defendant Petree.

Cook died seized of a large landed estate in community with his wife. By his will he made a number of special bequests and devises to his children, some of which are herein called in question. But by the eleventh clause of his will he devises to his wife Nancy some 1800 or 1900 acres of land, a part of his headright, for and during her natural life, with the proviso that the land so devised shall be to her in lieu of any legal claim she may have to any portion of the land at his death. But he confers on her the power to sell or dispose of the same, if necessary for the maintenance and education of his minor heirs.

By the twelfth clause of the will, having in view the interest of his minor heirs, he gave to his wife all the residue of his estate, real and personal, to be managed and disposed of by her during her natural life in a way most conducive to the maintenance and education of such heirs. By the thirteenth clause of the will he directs that at the death of his wife, Nancy, the property devised to her shall be equally divided among his children then living. The will appoints the widow and Peter Petree executors.

This will was probated at the November term, 1848.

The executors named accepted the trust and qualified according to law.

In April, 1856, James Spillers was appointed guardian of Mary, Georgie and Thelisa, minor daughters and heirs of Wm. A. Cook; John W. Cook was appointed guardian of Zion W. Cook, a lunatic; and in 1857, the executors having administered the trust in accordance with the terms of the will, were discharged—the guardians having received the shares of money and property belonging to their wards, and the widow acknowledging herself in receipt of the share coming to her.

On the fourth of April, 1859, Mrs. Cook sold and conveyed two hundred acres of the land devised to her for life to Peter Petree, and on the twenty-eighth of January, 1862, she also sold and conveyed two hundred acres more, by deeds in fee simple, to said Petree. On the third of August, 1867, she sold and conveyed in like manner one hundred acres to L. E. Stanley. In 1869 she also sold two hundred acres to Jesse Shackelford; and afterwards bargained and sold one hundred acres to B. B. Perry, giving a bond for title.

In 1869 Petree and wife sold two hundred acres of their purchase from Mrs. Cook to Hinson, and Stanley and wife sold one hundred acres to W. A. Rollins, who conveyed the same to T. W. House.

The questions presented for our decision are:

1. Had Wm. A. Cook power and authority under the law to dispose of his estate in the manner in which he did? Could he and was it his intention to put his wife to an election whether she would take under the will or abide her legal rights independent of the will?

2. Did she elect to take under the will; and if so, is she bound by that election; and what power of disposal does the will give her over the lands devised to her for life?

3. If she elected to take under the will, did she relin-

quish her rights as a community partner in the lands devised to her?

We answer the first inquiry: There can be no doubt but Mrs. Cook could have defeated the will of her husband if she had seen proper so to do, and maintained her interest in community property independent of any control his will could exercise over it; but not having seen proper to do so, we think the evidence clearly establishes the fact that, with the full knowledge of her rights, she elected to take under the will, by which she and all persons claiming under her must be bound. (Carroll v. Carroll, 20 Texas, 731.) The fact that we derive from the principles of the civil law our law of property as between husband and wife, will not prevent either one of the marital partners by will placing before the surviving partner the right and power of election to take under the will, or decline its provisions in favor of the rights secured by law. We think it was evidently the intention of the testator in this case to offer his wife such an election, in view of the advantages which might be secured to their children, who were the common offspring of both parents, and also the benefits which might arise under the will to the widow herself.

We think there could be no doubt, from all the facts, of Mrs. Cook's election. She appears to have been an industrious, managing woman, considered by her husband, and doubtless by the probate court, capable of executing his will, which she appears to have done.

For about nine years she managed, and during this time settled, his estate, and no complaint appears to have been made against her, except that of her alienation of the lands referred to.

It appears that she died in 1870, and at her death we think her estate in the lands determined. There was doubtless one purpose, viz., the maintenance and educa-

tion of the minor children, for which she might have sold the lands in fee. But it does not seem that this necessity ever arose ; indeed, the evidence negatives any such hypothesis. The children apear to have been kept at work, and not much regard paid to their education. The family made a comfortable living, and in 1856 the guardians received a considerable portion for each of their wards ; nor does it appear that any part of the proceeds of the sale of the lands was ever applied to the support or education of the children.

Admitting the validity of the will, and the election of the widow to take under it, and that the land was not sold for the support and education of the children, his honor the district judge, by the decree, appears to have held that the widow had a right to sell these lands by deed in fee simple, for her own support and maintenance. This we think is manifest error, and for this cause the judgment must be reversed and a decree rendered in this court in conformity with the prayer of the original petition.

The conveyances of Nancy Cook must be set aside. Partition will be ordered of the 247-acre tract devised to Elmira Mary Cook, and of the 320-acre tract devised to Zion W. Cook. The conveyances of those persons claiming under Nancy Cook will also be canceled and set aside, and all the lands belonging to the estate of Wm. A. Cook, deceased, at the time of his death, not devised, including those devised to his wife, will be divided among the children of said Wm. A. Cook, who were living at the time of the death of Nancy Cook.

REVERSED AND REMANDED.

OGDEN, P. J., *dissenting.*—Not being able to assent to the opinion of the court in this case, I deem it proper to state my reason for the dissent. In the first place Wm.

A. Cook, the testator, having died before the passage of the act of July, 1856, concerning wills, had no power to dispose absolutely at his pleasure of more than one-fourth of his estate, he leaving a large family of children as his heirs. His will, therefore, so far as it came in conflict with the then existing statute, should be regarded as null and void, so far as three-fourths of his estate is concerned. (Haggerty v. Haggerty, 12 Texas, 460.) Again, Cook had no right to dispose of property not his own. And while it is admitted that much the greater portion of the property bequeathed, including the lands, was community property between himself and wife, it must also be admitted that one-half of that community property belonged absolutely to the wife, and on the death of the husband could at once be sold or otherwise disposed of by her, and only by her. It follows that the will of Cook wherein it attempts, if it does so attempt, to devise more than one-half interest in the community estate should be regarded as void. But it is claimed by counsel, and so held by this court, that the surviving wife has elected to take under the will, and therefore has surrendered her community rights. In the first place it may be asserted that the record contains no evidence of any such election; and in the next place, I have been unable to find in the will any requisition or condition of that kind. The will bequeaths to the wife the balance of the testator's headright league of land in lieu of any legal claim which she might otherwise have to any part of *his* land at his decease. I cannot understand the will has any reference to the wife's land, but only to *his one-half interest* in the community and his separate estate, and the condition required is that this shall be in lieu of her life-estate in one-third of the testator's estate which she would be entitled to under the statute of descent and distribution. She may have elected to take under the will instead of under the statute

referred to, but this election could in nowise affect her community estate. The terms of the will in this case are quite similar to those in the will in Carroll v. Carroll, 20 Texas, 731; and in that case a decree was ordered giving to the surviving wife one-half of the community estate, as hers absolutely, unaffected by the will, and also giving her the portion devised to her under the will of her deceased husband out of his half of the community estate; and such in my judgment should be the decree in this case, or at least the rights of the surviving wife should be recognized to that extent. And under this view of the law, the will of Wm. A. Cook could be considered valid only as to the absolute disposition of one-fourth of his half of the community estate between himself and his surviving wife.