Oveta Culp **HOBBY**, as Secretary, Health, Education and Welfare, (Marion B. Folsom, substituted in place of Oveta Culp Hobby, former Secretary of Health, Education and Welfare,) Appellant,

v.

Bertha M. **BURKE**, Individually, and as Mother and next Friend of Charles M. Burke, minor son, Appellee.

No. 15420.

United States Court of Appeals Fifth Circuit.

Dec. 9, 1955.

Rehearing Denied Jan. 7, 1956.

William C. Calhoun, U. S. Atty., Augusta, Ga., Donald H. Fraser, Asst. U. S. Atty., Savannah, Ga., Samuel D. Slade and Marcus A. Rowden, Attys., Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for appellant.

John M. Brennan, Savannah, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

■ On evidence, abundant and substantial,[1] the Secretary found that, under Georgia standards,[2] no valid common law marriage existed between the wage earner, Edward L. Burke (the Insured), and Bertha Montgomery [Burke]; and, applying this, rejected a Mother's claim, § 202(g) of the Social Security Act, 42 U.S.C.A. § 402(g), by Bertha and a Child's claim, § 202(d), 42 U.S.C.A. § 402(d) for their illegitimate son, Charles Montgomery Burke. On appeal, § 205(g), 42 U.S.C.A. § 405(g), the district court went down the middle—affirming the denial of the Mother's claim for want of a valid marriage, but, coining a new phrase, finding a "qualified" common law marriage sufficient to legitimate Charles, reversed the Secretary and allowed the Child's benefits. In the Government's appeal from this allowance, Bertha acquiesces, without cross appeal, in denial of the Mother's claim.

■ The finding against common law marriage, which we accept, is decisive since determination of eligibility under the Act for Child's benefits requires the Administrator to "apply such law as would be applied in determining the devolution of intestate personal property by the courts of" Georgia.[3] Under Geor-

1. The Act, § 205(g), 42 U.S.C.A. § 405(g), provides, "The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive * * *." See Thompson v. Social Security Board, 81 U.S.App.D.C. 27, 154 F. 2d 204; Hobby v. Hodges, 10 Cir., 215 F. 2d 754, 757; N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; N. L. R. B. v. Poultry Enterprises, Inc., 5 Cir., 207 F.2d 522, 524.

The conclusion was fully justified on documentary and testimonial evidence. Bertha had lived with at least two other men. One or both of these relationships might have been sufficient to constitute a common law marriage, with no dissolution by divorce or death adequately proved. She had, in addition to Charles, three other children whose paternity was doubtful even to her. She first fixed the time she and Burke began living together at 1945, another time at 1947, with Charles being born in 1946. Charles' birth certificate is blank as to father (cf. § 88–1111, Code of Georgia). They maintained two households a few blocks apart, required, she said, because of the large number of children. She was known indiscriminately to friends and relatives as Bertha Burke and Bertha Montgomery. Her description of the "agreement" to marry was, "Me and him talked everything over", and agreed that, "We would try to live together * * * and maybe one day we might marry." * * * "We was planning to get married this year [1952] but he died."

During Edward's lifetime he claimed (1950 Income Tax Return) only one additional exemption "Charles Burke—son" and none was claimed for a wife, in Application (1949) for Earners Primary Benefits, he listed himself as unmarried. In 1950 he sought benefits for what he described as illegitimate child, stating in one interview (Sept. 1950) that he might take action to legitimate the child. By will he left all property to "my baby Charles Burke" with no mention of Bertha as his wife.

2. Georgia, following the usual approach for a valid common law marriage, requires (a) parties able to contract, (b) an actual contract, (c) consummation. § 53–101, Code of Georgia; Campbell v. Allen, 208 Ga. 274, 66 S.E.2d 226; Drewry v. State, 208 Ga. 239, 244, 65 S.E.2d 916; Lefkoff v. Sicro, 189 Ga. 554, 576–580, 6 S.E.2d 687, 133 A.L.R. 738. As foreign as the statement of legalistic standards may be to the illiterate and ignorant who are so frequently participants in these relationships, the law rigorously exacts evidence of a present intention to be husband and wife and where words, conduct and other evidence indicates the intent that marriage shall take place sometime in the future, neither the continued living together nor the holding out as man and wife is sufficient. Peacock v. Peacock, 196 Ga. 441, 452, 26 S.E.2d 608.

3. The person eligible for benefits under § 202(d), 42 U.S.C.A. § 402(d) is a " * * * child (as defined in section 416 (e) [§ 216(e)] of this title) * * * of

gia law a child born out of wedlock is illegitimate [4] and does not take by devolution.[5]

If this is harsh, it flows from local concepts which, if need be, can be ameliorated by appropriate local, Georgia action as its declared policies on such domestic matters may come under its legislative or judicial review. On such internal matters, Congress, by § 216(h) (1), takes the state policy as it is.

Reflecting the contemporary distaste for the visitation of penalties upon the innocent victims of such illicit relationships, the district court apparently thought that the Georgia declaration of policy favoring legitimacy, §§ 74–101, 26–5603, and 53–104, Code of Georgia, avoided the harsh denial of the statutory benefits to a child of acknowledged pa-

ternity and dependence. But § 53–104 of the Georgia Code [6] and the policy which it codifies does not legitimate the innocent offspring of an illicit relationship. This declared policy is applicable only to those situations, broadly defined in the Code, where a marriage contract has been undertaken, but is void or voidable because of the legal inability of one of the parties to make a valid contract.[7] Where, as here, no marriage, either ceremonial or common law, ever took place and the relationship contemplated, at most, the future consummation of a contract to marry, the offspring are illegitimate.

Since, under Georiga law, the child was not legitimate, the district court's allowance of Child's benefits was clearly erroneous and must be

Reversed.

an individual who died a fully or currently insured individual * * *." § 216(e), 42 U.S.C.A. § 416(e) defines "child" as the "child of an individual". This term is further defined in § 216(h) (1), 42 U.S.C. A. § 416(h) (1), "* * * In determining whether an applicant is the * * * child * * * of a fully insured or currently insured individual * * * the Administrator shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual * * * was domiciled at the time of his death * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a * * * child * * * shall be deemed such." See also Sherman v. Federal Security Agency, 3 Cir., 166 F.2d 451; Magner v. Hobby, 2 Cir., 215 F.2d 190, certiorari denied 348 U.S. 919, 75 S.Ct. 305.

4. § 74–201, Code of Georgia, codifies its common law that a child born out of wedlock whose parents do not subsequently intermarry is illegitimate. Legitimation can be effected by (a) subsequent marriage of the mother and reputed father with recognition of the child as his by the father, § 74–101, Code of Georgia, or (b) by court order on petition of the father, § 74–103, Code of Georgia. Neither of these steps were taken here.

5. § 113–904, Code of Georgia.

6. "Void marriages; legitimacy of issue of marriage.—Marriages of persons unable to contract, or unwilling to contract, or fraudulently induced to contract, shall be void. The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate. In the latter two cases, however, a subsequent consent and ratification of the marriage, freely and voluntarily made, accompanied by cohabitation as husband and wife, shall render valid the marriage."

7. Perkins v. Levy, 158 Ga. 896, 124 S.E. 799; Eubanks v. Eubanks, 34 Ga. 407; Campbell v. Allen, 208 Ga. 274, 66 S.E. 2d 226; Griffin v. Booth, 176 Ga. 1, 167 S.E. 294, so heavily relied upon to sustain legitimacy here, each involved an actual marriage, ceremonial or common law, which marriage was void because of a prior undissolved marriage. The prior marriage, undissolved, prevented the second marriage from being valid, but until it was annulled, the issue were recognized as legitimate and eligible to inherit. Actually this is what Judge McDuffie did in Ray v. Social Security Board, D.C.S.D.Ala., 73 F.Supp. 58, although he also stated a construction that eliminated legitimacy as a test if the child were living with the insured; see Mayers v. Ewing, D.C.E.D.Pa., 102 F. Supp. 201, which rejected such construction.