72 N.J. Super. 325 (1962)
178 A.2d 113
IN THE MATTER OF THE ESTATE OF JOHN W. WEEAST, DECEASED.
Superior Court of New Jersey, Burlington County Court, Probate Division.
Decided February 2, 1962.
*327 Messrs. Wells and Wells, attorneys for defendants J. Arnold Weeast and Marion Weeast, for the motion (Mr. Harold B. Wells, Jr., appearing).
Messrs. Josephson & Lavine, attorneys for plaintiffs Hilda Weeast and Joan Knepp, contra (Mr. Milton Josephson, appearing).
WOOD, A.C., J.C.C.
This is an action brought by Hilda Weeast and Joan Knepp as plaintiffs against J. Arnold Weeast, administrator of the estate of John W. Weeast, deceased, and against Marion Weeast, mother of the said J. Arnold Weeast. Defendants move for summary judgment and the matter is before the court on that motion.
By the first count of the complaint, it is alleged that plaintiff Joan Knepp is the daughter of John W. Weeast, and as such "is entitled to one-third of the personal property and one-half of the residue of the real estate of the said John W. Weeast subject to the dower rights of one Marion Weeast"; that on August 24, 1960 Arnold Weeast was appointed administrator of the estate of John W. Weeast, deceased, by the Surrogate of Burlington County, and since that time has refused and still refuses to account "for the personal and real property in said estate" and refuses to distribute to Joan Knepp her share in said estate. Plaintiffs demand judgment under this count determining Joan Knepp's right in said estate, ordering said J. Arnold Weeast, as administrator, to account, and ordering said J. Arnold Weeast, as administrator, to distribute to Joan Knepp her share of the estate.
By the second count plaintiffs allege that said decedent during his lifetime conveyed a "certain property" (I assume, a parcel of real estate) in Bordentown Township to John W. Weeast and Hilda Weeast. They further allege that "a certain property" (again I assume they mean a parcel of real estate) in Surf City, Ocean County, New Jersey, was conveyed to John W. Weeast and Hilda Weeast. They *328 further allege that "the furniture and other household goods in the house located on the premises in Surf City" belong to the plaintiff Hilda Weeast. They further allege the death intestate of John W. Weeast, "leaving among his survivors" the said Hilda Weeast and Joan Knepp. By this count plaintiffs demand judgment "adjudicating their respective rights in the premises set forth in the second count of the complaint."
The facts appearing from the pleadings and affidavits are substantially undisputed.
John W. Weeast was lawfully married to Marion Weeast on July 23, 1924. One son, J. Arnold Weeast, was born of this marriage on May 24, 1927.
On or about January 15, 1933 John W. Weeast deserted his wife and child, and very shortly thereafter he commenced cohabitation with the plaintiff named in this action as Hilda Weeast. Of this union was born, on November 5, 1933, a daughter who was given the name of Joan Dolores Weeast, who is now known as Joan Knepp.
The marriage between John W. Weeast and Marion Weeast was never dissolved. True, it is represented that about the year 1945 John and Hilda attempted to formalize their arrangement by obtaining Mexican "mail order" divorces from their respective spouses, and thereafter going through a ceremony of marriage on June 30, 1945 in Bel Air, Maryland. There is no proof in the pleadings and affidavits of the obtaining of these Mexican divorces, but whether they were or were not obtained is immaterial because such divorces, if obtained, were absolutely null and void. Tonti v. Chadwick, 1 N.J. 531 (1949).
John and Hilda continued to cohabit until John's death intestate on August 12, 1960. Following his death, as previously stated, letters of administration on his estate were granted by the surrogate to his son, J. Arnold Weeast.
The defendants now move "for an order dismissing the action because the complaint fails to state claim against the defendants upon which relief may be granted; or, in the alternative for a summary judgment for defendants *329 * * * on the ground that there is no genuine issue as to any material fact and that the defendants * * * are entitled to judgment as a matter of law."
I conclude that the motion must be granted.

1. RIGHTS OF JOAN KNEPP TO A DISTRIBUTIVE SHARE OF THE ESTATE.
It is clear that, from the time they commenced living together at least until the attempted divorces and their subsequent "marriage," the relationship of John and Hilda was entirely meretricious. The prior existing marriage of John and Marion was not dissolved, and therefore even an attempted common law marriage, which might under some circumstances have found legal favor in 1933 (there is no evidence of any attempted common law marriage during this period), could not be recognized. Therefore, the daughter born of this union, plaintiff Joan Knepp, was, at the time of her birth, an illegitimate child. Wieczoreck v. Folsom, 142 F. Supp. 507 (D.N.J. 1956).
This being so, Joan could only inherit through her mother, and would not be eligible to inherit any part of her father's estate, N.J.S. 3A:4-7, unless her status was subsequently altered and her illegitimacy cured in the eyes of the law.
Our Legislature has enacted three statutes designed to remove the stigma and disability of illegitimacy in certain situations. We must then inquire whether the protective cover of any of these extends to the plaintiff Joan.
First let us consider N.J.S. 3A:4-7 which, after limiting the right of inheritance of an illegitimate child, goes on to provide as follows:
"When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent, and distribution to, through and from him under this chapter." *330 Clearly, Joan does not fall within the purview of this statute. The statute declares legitimate a child whose parents subsequently "shall marry." The word "marry" can only mean "enter into a valid marriage." Joan's parents could not marry by reason of the disability of the prior existing marriage. That they went through a ceremony of marriage makes no difference. Such a ceremony was a void act and Joan could not be rendered legitimate thereby. Legitimacy under this statute can be accomplished only by the subsequent lawful marriage of her parents, not by an illegal ceremony. Cf. Bank of Montclair v. McCutcheon, 107 N.J. Eq. 564 (Prerog. 1930).
The same reasoning applies in consideration of R.S. 9:15-1, which reads as follows:
"Any child heretofore or hereafter born out of wedlock shall be legitimated by the intermarriage of his natural parents and their recognition and treatment of him as their child. A child so legitimated is entitled to all rights and privileges which he would have enjoyed had be been born after the marriage, his status being the same as if he were born in lawful wedlock."
This statute covers somewhat more broadly the situation treated in N.J.S. 3A:4-7. Whereas that statute renders legitimate for inheritance purposes an illegitimate child whose parents marry after his birth, the above quoted statute, R.S. 9:15-1, declares such a child legitimate for all purposes. But the same limitation must apply to R.S. 9:15-1 as to N.J.S. 3A:4-7. The phrase "the intermarriage of his natural parents" must and can only mean the lawful intermarriage of such parents.
But the plaintiffs point to R.S. 9:15-2 and argue that if Joan's condition was not ameliorated by the marriage ceremony between John and Hilda, she is nevertheless rendered legitimate by R.S. 9:15-2, which reads:
"Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the *331 status and rights to which he would have been entitled had he been born of a valid marriage."
It is true that this section does operate to render legitimate the children born of ceremonial but void marriages. Its purpose was and is "to clothe with the attribute of legitimacy the children of a ceremonial bigamous marriage," Capraro v. Propati, 127 N.J. Eq. 419 (E. & A. 1940). The legislative design, as the court further said in the Capraro case (at p. 433) was to "relieve the innocent children, where there was a ceremonial marriage, of the drastic pre-existing legal consequences of the parental transgression." (Emphasis supplied)
But the question then arises whether the plaintiff Joan Knepp is "a child born of a ceremonial marriage." I am forced to conclude that she is not. At the time of her birth her parents, though living together, had not even made a pretence at legalizing their relationship, nor did they do so until several years after her birth. And when they did so it was by attempting to cure an illegal relationship by an illegal act. They did not and could not thereby render Joan legitimate. Thus Joan was not born of a ceremonial marriage. She was born of a meretricious relationship. The ceremonial marriage, coming later, could not "ameliorate" her condition.
The plaintiffs argue that "the Courts of New Jersey have consistently stated that an innocent child should not have the stigma of bastardy placed upon him." As an ideal to be striven for, this has much to commend it. It would be capable of realization if perverse humans would refrain from engaging in illicit relationships. Since they persist in so engaging, however, it is inevitable that many children will be burdened by the stigma of illegitimacy. That burden has been partially lifted, not by the courts but by the Legislature, and the Legislature has only lifted it in certain particular and limited situations. The legislative policy is clearly discerned and set forth by Vice Chancellor Buchanan *332 in Bank of Montclair v. McCutcheon, supra. The court said:
"While there have been some statutes ameliorating the condition of the illegitimate child in certain particulars, the very fact that such acts have been specific, and not general (as in the case of the adopted child), is a clear indication of an intent not to extend the effect of such ameliorating legislation beyond the specific instances provided for.
The same thing is true with regard to one or two statutes giving to certain classes of illegitimate children the general and complete status of legitimate children  such as P.L. 1915, c[h]. 173 (R.S. 9:15-1) dealing with illegitimate children whose parents subsequently marry; and P.L. 1924, c[h]. 144 (R.S. 9:15-2) dealing with children of a ceremonial marriage subsequently declared void. These statutes are expressly limited to the specific classes mentioned and cannot be construed to include illegitimate children generally."
The court concluded that "it is well settled that the word `child,' in the statutes dealing with the transfer of property at death * * * does not include illegitimate children."
It is not, therefore the legislative intent or the legislative policy to relieve from the "stigma of bastardy" any illegitimate child, but only to relieve therefrom certain limited and restricted classes of such children: those born out of wedlock whose parents subsequently are united in a valid marriage, and those born of (i.e., following) a ceremonial marriage of their parents even though such ceremonial marriage be bigamous. The child of an unceremonial bigamous marriage is illegitimate. Caruso v. Caruso, 104 N.J. Eq. 588 (Ch. 1929); and such child's status is not cured by a subsequent ceremonial bigamous marriage of its parents.
I conclude that Joan Knepp is the illegitimate child of her father and mother and therefore has no right of inheritance from her father. N.J.S. 3A:4-7. It follows that plaintiff Joan Knepp has no right of inheritance from her father, either as to personal or as to real property.
What has been said is sufficient to dispose of the first count. But it should be added that insofar as this count *333 alleges a failure on the part of the defendant administrator to account for real estate, it completely fails to state a cause of action.
The administrator of an estate has no control over the decedent's realty except in the case where its sale is necessary to pay the debts of the estate, when the personal estate is insufficient, and then only by leave of the court. N.J.S. 3A:24-19 et seq.; R.R. 4:109-1 et seq. Subject only to this limitation the real estate of one dying intestate passes directly to his heirs at law.

II. THE RIGHTS OF THE PLAINTIFFS TO DECEDENT'S REAL ESTATE.
The second count of the complaint alleges certain conveyances of real estate and demands the adjudication of the rights of the plaintiffs therein. As to this it suffices to state that this court is without jurisdiction to make such an adjudication.
The court is not being asked to construe a will  there is none  but to determine title to real estate as among possible rival claimants under the intestate laws. The County Court has no jurisdiction to try title to real estate. Robison v. Furman, 47 N.J. Eq. 307 (E. & A. 1890); In re Dunn's Estate, 5 N.J. Super. 626 (App. Div. 1949). A fortiori, this court is without jurisdiction to try title to real estate situate outside Burlington County.
The second count contains an allegation that Hilda owns some household goods in Surf City. There is no allegation that these are wrongfully kept from her by the administrator; nor is there any demand for relief with respect thereto. If Hilda owns the goods they are not part of the estate and she should make claim to the administrator by sworn proof of claim in the usual manner.
The defendants' motion is granted. Judgment will be entered dismissing the complaint with costs.