92 N.J. Super. 118 (1966)
222 A.2d 297
L.
v.
L., ET AL.
Superior Court of New Jersey, Chancery Division.
Decided July 15, 1966.
Mr. Harold L. Jacobs for plaintiffs.
Mr. Theodore L. Van Winkle for defendant D.
Mr. George Warren, guardian ad litem for defendants F and E, infants.
*119 MATTHEWS, J.S.C.
This matter comes before me on cross motions for summary judgment. There is no factual dispute.
On November 11, 1928 G (now deceased) married plaintiff A. Two children, plaintiffs B and C were born of that marriage. On August 7, 1947 G obtained a Mexican mail order divorce. A had no participation in those proceedings. On October 29, 1947 G married defendant D in Connecticut before a justice of the peace. Prior to August 7, 1947 two children, concededly sired by G, were born to D. They are defendants E and F. G died intestate on October 18, 1962. On November 14, 1962 letters of administration were granted to D. They were subsequently revoked on application of A on March 8, 1963.
The single question presented for decision here is whether defendant children E and F, who were born out of wedlock, are to be deemed legitimate under the laws of descent and distribution. An answer to this question can only be given by resolution of an underlying question as to whether children born out of wedlock may be deemed legitimated by a subsequent ceremonial, void and bigamous marriage of the natural parents.
As a matter of statutory construction, the issue here presented is whether the word "marry," as used in the provisions of N.J.S. 3A:4-7, should be read to mean "valid marriage."[1] It is apparent that the Mexican mail order divorce of August 1947 was invalid, thereby rendering the marriage of G and D bigamous. Tonti v. Chadwick, 1 N.J. 531 (1949).
There are four statutes which relate to the question of legitimacy presented here. The first is N.J.S. 3A:4-7.[1] The *120 predecessor to this statute was R.S. 3:5-8 which provided as follows:
"3:5-8. If the father and mother of a child born out of lawful wedlock subsequently enter into the bonds of lawful wedlock and cohabit thereafter as husband and wife and such child shall have resided with and been recognized and treated by such parents as their child, such child shall be entitled to share in the estate of such father and mother equally with children born of a lawful marriage of the intestate. * * *" (Emphasis added)
R.S. 9:15-1 is a general legitimation statute which provides for legitimation "by the intermarriage of * * * natural parents," along with the requirement of recognition.[2] This statute became part of the law of our State by L. 1915, c. 173, §§ 1 and 2.
R.S. 9:15-2, the second statute found in the general legitimation chapter of Title 9, provides generally that children "born of a ceremonial marriage" are considered legitimate notwithstanding the subsequent declaration that such marriage is void.[3] This statute became law under L. 1924, c. 144, §§ 1 and 2.
Finally, N.J.S. 2A:34-20, found in the divorce and nullity statutes, provides that only a certain class of issue of void marriages are to be deemed illegitimate, that class being "where the marriage, not being a ceremonial one, is dissolved *121 because either party had another wife or husband living at the time of a second or other marriage."[4]
This is not a question of a first impression in this State. See In re Weeast, 72 N.J. Super. 325 (Cty. Ct. 1962). Weeast presented a set of facts practically identical with those presently before me. There the County Court gave an extremely narrow reading to N.J.S. 3A:4-7 and construed the word "marry" to mean "valid marriage." The opinion of the court, however, does not consider the change made in R.S. 3:5-8, presently contained in N.J.S. 3A:4-7, nor is there any discussion contained therein of the probable interrelation of N.J.S. 3A:4-7 with N.J.S. 2A:34-20 and R.S. 9:15-2.
Other New Jersey precedents on the legitimizing effect of valid marriages deal with marriages that predated birth, i.e., "children born of" such marriages. In Capraro v. Propati, 126 N.J. Eq. 67 (Ch. 1939), the court held that R.S. 9:15-2 did not legitimize the issue of a designedly bigamous marriage, and found that R.S. 9:15-1 requires a valid intermarriage. The Court of Errors and Appeals reversed in 127 N.J. Eq. 419 (E. & A. 1940), and, in doing so, read R.S. 9:15-2 in conjunction with R.S. 2:50-33 (the predecessor to N.J.S. 2A:34-20), stating:
"Evidently, it was the legislative purpose to clothe with the attribute of legitimacy the children of a ceremonial bigamous marriage. The act of 1931 distinguished between a ceremonial and non-ceremonial bigamous marriage, and explicitly granted legitimacy to the issue of the former. The design was to relieve the innocent children, where there was a ceremonial marriage, of the drastic pre-existing legal consequences of the parental transgression. That policy is outstanding; and it manifestly does not transcend the legislative province. The treatment of these provisions in the Revision is demonstrative *122 of a legislative sense of the subsistence of the act of 1924 from the time of its adoption until its incorporation in the Revision. Compare Crater v. County of Somerset, 123 N.J.L. 407. Under that provision, the children are of the same status in law as those born of a `valid marriage.'
The contention of respondent that the act of 1924 `does not protect the offspring of a marriage null in law, which needs no decree of court to declare such result,' makes a distinction that is not to be found in the statutes, viewed as a homogeneous whole  one that is clearly illusory. * * *"
No mention was made in the opinion of R.S. 9:15-1. See also Endres v. Grove, 34 N.J. Super. 146 (Ch. Div. 1955).
A review of out-of-state decisions discloses a division of authorities on this question, with the majority favoring legitimation.
In Bates v. Mead, 192 S.W. 666, 671 (1917), the Kentucky Court of Appeals read various legitimizing sections of the Kentucky statutes together, and reached a conclusion as to a legitimizing scheme of legislation. It seems apparent from the opinion that § 2098 of the Kentucky statute therein considered parallels R.S. 9:15-2, and that § 1398 of the Kentucky law approximates N.J.S. 3A:4-7. In reaching its determination, the Kentucky court reasoned as follows:
"* * * If the issue of a void marriage are legitimate under section 2098, why should not the issue before the marriage be made legitimate under section 1398, although the marriage was void? The same reasons that would save the child of a void marriage from illegitimacy should save the child born before marriage and thus put the child of a void marriage on the same footing with the child born out of marriage, but whose parents subsequently married." (at p. 671)
See also, Stamper v. Lunsford, 215 S.W. 297 (Ky. Ct. App. 1919).
The Supreme Court of Virginia relied heavily on Bates v. Mead, supra, in its decision in Goodman v. Goodman, 142 S.E. 412 (1928). As in Bates v. Mead, the Virginia statute of descent and distribution was read in conjunction with the Virginia annulment statute. The Virginia court specifically disregarded New York and Massachusetts precedents *123 to the contrary in favor of the reasoning of the Kentucky Court of Appeals.
In Rivieccio v. Bothan, 165 P.2d 677, 680 (1946), the Supreme Court of California, in dealing with this issue, followed the Virginia decision in Goodman. The California statute then before the court, Civil Code § 215, read:
"A child born before wedlock becomes legitimate by the subsequent marriage of its parents."
In its opinion the California court held that such statutes "remove the stain and disability of bastardy" not only from children born after the void marriage of their parents or before their valid marriage, but also from children born before the invalid marriage of their parents.
Cases taking the opposite view include Adams v. Adams, 154 Mass. 290, 28 N.E. 260, 13 L.R.A. 275 (Sup. Jud. Ct. 1891), and Olmsted v. Olmsted, 83 N.E. 569 (Ct. App. 1908).
In Adams, the Supreme Judicial Court of Massachusetts was called upon to apply § 215 of the California Code, cited above. Mr. Justice Holmes, in his opinion for the court, stated:
"[i]t may be assumed that the California statute to which we are referred (Civil Code, § 215) requires a valid marriage to legitimate an earlier-born child. * * *" (28 N.E., at p. 261)
The justice cited as authority for the afore-mentioned assumption a Massachusetts case, 5 Allen 257. The argument for a broad reading based on an interrelation of the California descent and distribution and annulment sections was rejected, but with unpersuasive reasoning.
Relying almost totally on Adams, the Court of Appeals in New York came to a similar conclusion in Olmsted, supra. This view is still the law of New York. See McCarter v. McCarter, 227 N.Y.S.2d 608 (Sup. Ct. 1962).
*124 There is no reported opinion in the State of Massachusetts citing the Adams case. It seems safe to say that New York alone continues to hold for a narrow construction of legitimizing legislation such as is involved here. However, the New York legislative scheme may be described as drastically different from that of our State.[5]
The out-of-state cases calling for a broader construction of legitimizing legislation are founded in reason. The contrary precedent is based on the Adams opinion, which appears to be nothing more than a statement of a conclusion as to the assumed meaning of the California statute. In this regard, it is interesting to note that the courts of California subsequently construed the California statute contrary to the assumption made by Justice Holmes.
I cannot conclude that there was any legislative intent or policy to inflict the "stigma of bastardy" on any child through a narrow reading of legitimizing statutes, unless specific indication is given thereof within the statutes. Before 1951 our law of descent and distribution couched the conditions of legitimation in terms of a valid marriage. The condition was changed by the 1951 law revision to read simply "marry." There is nothing to be found in the notes to the revision to indicate a reason for the change. Yet, in view of the convincing precedent of the Kentucky, Virginia and California courts, and the essential logic in concluding that the 1951 change was substantive, a broad construction must be favored. Under such a construction N.J.S. 3A:4-7 is read as part of a legislative scheme for legitimation, to the effect that children born prior to a ceremonial but bigamous marriage of their natural parents are deemed legitimate for purposes of descent and distribution.
In view of the foregoing, I conclude that defendants E and F are the heirs and next of kin of decedent G.
A judgment in conformity with these conclusions may be presented on notice or by consent. No costs to any party.
NOTES
[1] 3A:4-7. ILLEGITIMATE CHILDREN.
For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter."
[2] 9:15-1. MARRIAGE OF NATURAL PARENTS
Any child heretofore or hereafter born out of wedlock shall be legitimated by the intermarriage of his natural parents and their recognition and treatment of him as their child. A child so legitimated is entitled to all rights and privileges which he would have enjoyed had he been born after the marriage, his status being the same as if he were born in lawful wedlock."
[3] 9:15-2. CHILDREN OF VOID CEREMONIAL MARRIAGE
Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the status and rights to which he would have been entitled had he been born of a valid marriage."
[4] 2A:34-20. EFFECT OF JUDGMENT ON LEGITIMACY OF ISSUE
A judgment of nullity of marriage shall not render illegitimate the issue of any marriage so dissolved, except in a case where the marriage, not being a ceremonial one, is dissolved because either party had another wife or husband living at the time of a second or other marriage. In such a case the marriage shall be deemed void ab initio, and the issue thereof shall be illegitimate."
[5] New York Domestic Relations Law, McKinney's Consol. Laws, c. 14, § 24; New York Civil Practice Act, § 1135.