51 N.J. 345 (1968)
240 A.2d 429
IN THE MATTER OF THE ESTATE OF JOSEPH CALOGERO.
The Supreme Court of New Jersey.
Argued March 5, 1968.
Decided April 1, 1968.
*346 Mr. Benjamin Marmer argued the cause for defendant-appellant, Frank Rizzo.
Mr. Richard C. Schramm argued the cause for plaintiff-respondent, Vito Camarda, Administrator (Messrs. Hyland, Davis & Reberkenny, attorneys).
The opinion of the court was delivered by PROCTOR, J.
The sole question before us is the legitimacy for inheritance purposes of a child, born out of wedlock, whose parents subsequently entered into a bigamous ceremonial marriage. Resolution of this problem hinges on the construction to be placed on the term "marry" in N.J.S. 3A:4-7:

*347 "* * * * * * * *
When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter." (Emphasis added.)
The case is submitted on an agreed statement of facts pursuant to R.R. 1:6-2. Joseph Calogero was born out of wedlock in the City of Burlington on July 12, 1907. Ten years later, in February 1917, his parents entered into a ceremonial marriage in Burlington. At the time of this marriage, Joseph's mother was still the wife of another man whom she had married in Italy in 1897 but with whom she had not lived since shortly after that marriage. No divorce was ever obtained dissolving the marriage in Italy. During his parents' lives, Joseph always was recognized as their son, both by them and their neighbors in Burlington.
On June 19, 1964 Joseph, a resident of the City of Burlington, died intestate. He never married and his parents predeceased him. The appellant herein, Joseph's first cousin on his father's side, was excluded from sharing in the distribution of Joseph's estate. The County Court ruled that the bigamous marriage of Joseph's parents did not remove his illegitimacy and therefore participation in the distribution of his estate was limited to his maternal relatives. The appeal from the County Court was certified by us before argument in the Appellate Division.
The issue of the legitimating effect of an invalid marriage previously has been before our trial courts where opposite conclusions were reached. The Burlington County Court in In re Weeast, 72 N.J. Super. 325 (1962) construed the word "marry" in N.J.S. 3A:4-7 to mean a valid marriage and held that a child born of a meretricious relationship was not legitimated by the subsequent bigamous ceremonial marriage of her parents. Taking a contrary view, the Chancery Division in L. v. L., 92 N.J. Super. 118 (1966) broadly construed "marry" to include a ceremonial but bigamous *348 marriage and concluded that children born prior to such marriage of their parents were to be deemed legitimate under the statute.
We hold that the word "marry" as used in N.J.S. 3A:4-7 embraces all ceremonial marriages, whether valid or not. That this construction accords with the legislative intent is demonstrated by the revision of the statute in L. 1951, ch. 345. The predecessor statute, R.S. 3:5-8, provided as follows:
"If the father and mother of a child born out of lawful wedlock subsequently enter into the bonds of lawful wedlock and cohabit thereafter as husband and wife and such child shall have resided with and been recognized and treated by such parents as their child, such child shall be entitled to share in the estate of such father and mother equally with children born of a lawful marriage of the intestate. * * *" (Emphasis added.)
When the present statute was enacted, the old language "lawful wedlock" was replaced by the more general term "marry," the requirement of cohabitation was eliminated, and no longer was it necessary that the child reside with the parents.[1] The notes to the revision state that the purpose for the change was "the elimination of the conflict between R.S. 3:5-8 and 9:15-1." Report, Advisory Committee on Revision of Statutes; Suggested Changes in the Tentative Draft of the Revision of Titles 2 and 3 and Sections of Other Titles of the Revised Statutes of New Jersey, comment to N.J.S. 3A:4-7 (Draft No. 3A:4-6). N.J.S.A. 9:15-1, part of the general legitimacy statutes, provides:
"Any child heretofore or hereafter born out of wedlock shall be legitimated by the intermarriage of his natural parents and their recognition and treatment of him as their child. A child so legitimated is entitled to all rights and privileges which he would have enjoyed had he been born after the marriage, his status being the same as if he were born in lawful wedlock." (Emphasis added.)
*349 That the drafters saw a conflict between the phrase "lawful wedlock" in R.S. 3:5-8 and the term "intermarriage" in N.J.S.A. 9:15-1 clearly shows that the latter language denotes a broader concept than "lawful wedlock." It is significant that to bring these two statutes into harmony the stricter requirements of R.S. 3:5-8 were eliminated or broadened to conform with the provisions of N.J.S.A. 9:15-1. Perforce, the substitution of "marry" for "lawful wedlock" evinces a legislative intent that the legitimating effect of N.J.S. 3A:4-7 was not to be limited to children whose parents were validly married.
Section 3A:4-7 must be read in conjunction with N.J.S.A. 9:15-2 and N.J.S. 2A:34-20 which provide that a child born of a void ceremonial marriage is legitimate.[2] These two statutes make clear that the Legislature did not intend a child's legitimacy to turn upon the validity of his parents' marriage, even if bigamous, so long as the marriage was ceremonial. See Capraro v. Propati, 127 N.J. Eq. 419 (E. & A. 1940), holding that under those statutes children born after their parents' bigamous ceremonial marriage were legitimate; cf. Endres v. Grove, 34 N.J. Super. 146 (App. Div. 1955).
Thus, the ceremonial marriage of Joseph's parents, though bigamous, would have been effective under N.J.S.A. 9:15-2 and N.J.S. 2A:34-20 to render legitimate any child born *350 subsequent to that marriage. In light of this legitimating effect ascribed to such marriage by the Legislature, we conclude that the bigamous marriage of Joseph's parents, though otherwise void, was sufficient to satisfy the marriage requirement of N.J.S. 3A:4-7. Had the marriage of Joseph's parents been valid, it would have made him legitimate even though his birth preceded the marriage. N.J.S. 3A:4-7; N.J.S.A. 9:15-1. Had he been born after the marriage of his parents, he would be legitimate even though the marriage was bigamous and therefore void. N.J.S.A. 9:15-2; N.J.S. 2A:34-20; Capraro v. Propati, supra. Considering the operation of the statutes in these instances, it would be illogical to deny Joseph the benefit of them under the facts in this case. We can see no reason in the statutory scheme why a child born before his parents' bigamous marriage should not have the same status as would his brother, born after that marriage. The child born before such a marriage is no more culpable for his parents' transgressions than is his after-born brother. It would be repugnant to the liberal tenor of our legitimacy statutes for the stigma and disabilities of bastardy to result merely from the fortuity of the child's birthdate. Our legitimation statutes were enacted for the humane purpose of meliorating the harsh common law rules; in determining the statutory meaning, weight must be given to the public policy favoring legitimacy embodied in our legislative design.
The view we have taken accords with the weight of authority of other jurisdictions construing legitimating statutes similar to those of this State. Rivieccio v. Bothan, 27 Cal.2d 621, 165 P.2d 677 (1946); Goodman v. Goodman, 150 Va. 42, 142 S.E. 412 (1928); Bates v. Meade, 174 Ky. 545, 192 S.W. 666 (1917); Clinton County Nat. Bank & Trust Co. v. Todhunter, 43 Ohio App. 289, 183 N.E. 88 (1931). See Annotation, 84 A.L.R. 499 (1933); 6 So. Cal. L. Rev. 338 (1933). The contrary view was reflected in Adams v. Adams, 154 Mass. 290, 28 N.E. 260 (1891) where the Massachusetts *351 Supreme Court construed the California legitimating statutes as requiring a valid subsequent marriage of the parents. However, the Supreme Court of California later rejected this construction in Rivieccio v. Bothan, supra, and consequently the decision in Adams is of doubtful precedential value. In New York apparently only a valid marriage will legitimate previously born children. People ex rel. Meredith v. Meredith, 297 N.Y. 692, 77 N.E.2d 8 (1947); Matter of Moncrief's Will, 235 N.Y. 390, 139 N.E. 550, 27 A.L.R. 1117 (1923). However, the New York legitimacy statutes are more restrictive than the New Jersey statutes we are called upon to construe. Compare N.Y. Domestic Relations Law, McKinney's Consol. Laws c. 14 § 24; N.Y. Civil Practice Act § 1135 with N.J.S. 3A:4-7; N.J.S.A. 9:15-1 and 2; N.J.S. 2A:34-20. In any event, so far as the New York decisions may be read as conflicting with the conclusion we have reached, we decline to follow them. The County Court's opinion in In re Weeast, supra, 72 N.J. Super. 325, incorrectly stated the law of New Jersey; the correct view was taken by Judge Matthews in L. v. L., supra, 92 N.J. Super. 118.
We hold that the bigamous ceremonial marriage, after his birth, of Joseph Calogero's parents was effective under N.J.S. 3A:4-7 to make him the legitimate child of both his parents for the purpose of descent and distribution to, through, and from him. Accordingly, the court below erred in excluding Joseph's paternal relatives from sharing in the distribution of his estate. The judgment is reversed and the matter is remanded to the County Court for a disposition consistent with this opinion.
For reversal and remandment  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.
NOTES
[1] N.J.S. 3A:4-7 also provides for intestate succession through and from the child. R.S. 3:5-8 applied only to distribution to the child.
[2] N.J.S.A. 9:15-2 (dealing generally with legitimacy) provides:

"Any child heretofore or hereafter born of a ceremonial marriage is the legitimate child of both parents notwithstanding the marriage be thereafter annulled or declared void. Such child shall enjoy the status and rights to which he would have been entitled had he been born of a valid marriage."
N.J.S. 2A:34-20 (Divorce and Nullity) reads:
"A judgment of nullity of marriage shall not render illegitimate the issue of any marriage so dissolved, except in a case where the marriage, not being a ceremonial one, is dissolved because either party had another wife or husband living at the time of a second or other marriage. In such a case the marriage shall be deemed void ab initio, and the issue thereof shall be illegitimate." (Emphasis added.)