*In re* ESTATE OF BARBARA L. BARTOLINI, Deceased (Russell C. Enke, Plaintiff-Appellant, v. Jacqueline Bartolini, Independent Adm'r of the Estate of Barbara L. Bartolini, Deceased, Defendant-Appellee).

First District (5th Division)   No. 1—94—3658

Opinion filed November 27, 1996.

Richard A. Siebel, of Siebel, Whipple & Schofield, of Chicago, for appellant.

David L. Choate, of Worth, for appellee.

JUSTICE GORDON delivered the opinion of the court:

In this case, the circuit court of Cook County, probate division, entered an order declaring heirship to the intestate estate of Barbara L. Bartolini, wherein the decedent's maternal relatives were determined to be her only heirs. The plaintiff, Russell Enke, a half-brother of the decedent (the son of the decedent's father but of a different mother), filed a petition to amend that order, seeking to have himself and eight other paternal relatives of the decedent named as heirs to the decedent's estate. The trial court denied that petition, and this appeal from that order ensued pursuant to Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

The facts are undisputed. The decedent's father, George Enke (George), married Sarah Curry (Sarah) in 1909 in Pennsylvania and the two had four children between 1909 and 1914, namely, the plaintiff, his brother and his two sisters. George later abandoned Sarah and their four children in Pennsylvania, and began cohabiting with Violet Stott (Violet) in Chicago. In 1914, George and Violet had their only child, the decedent, Barbara Bartolini, out of wedlock. In 1915, without obtaining a divorce from Sarah, who was still alive at that time, George entered into a bigamous marriage with Violet in Chicago. Both parties concede that that marriage was invalid.

George predeceased both of his putative spouses and the decedent when he died in Chicago in 1947. George's first wife, Sarah, died in 1965 in Pennsylvania; the decedent's mother, Violet, died in 1971 in Chicago; and the decedent died intestate in 1992 in Chicago. The decedent's sole survivors on the side of her mother, Violet, were her cousins, Vernon Church and Dorothy James. Bartolini's sole survivors on her father's side were the progeny of her father and his first wife, Sarah. These included the plaintiff, Russell Enke, who was the decedent's half-brother; his sister, Martha; the three children of his sister Dorothy; and the four grandchildren of his brother James.

█ In its order declaring heirship, the trial court named the decedent's maternal cousins, Vernon Church and Dorothy James, as the sole heirs to the decedent's intestate estate. This order is consistent with section 2—2 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2—2 (West 1994)), which provides that the intestate estates of illegitimate children pass to their respective maternal relatives but not to their paternal relatives. This rule is to be contrasted with section 2—1 of the Probate Act (755 ILCS 5/2—1 (West 1994)), which provides that the intestate estates of legitimate children pass to their

respective paternal as well as maternal relatives.[1] In his petition to amend the trial court's order declaring heirship, plaintiff urged that when the decedent died, she was the legitimate child of George and Violet by virtue of their, albeit bigamous, marriage ceremony, which took place while George was still married to his first wife, Sarah. Therefore, plaintiff urged, because the decedent was legitimate when she died, her aforementioned paternal relatives were entitled to participate in the distribution of her estate.

■ In support of his petition to amend the order declaring heirship, plaintiff relied upon the legitimating statutes enacted under section 2—2(h) of the Probate Act (755 ILCS 5/2—2(h) (West 1994)), and under sections 212(c) and 303 of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Marriage Act) (750 ILCS 5/212(c), 303 (West 1994)). Section 2—2(h) of the Probate Act provides, *inter alia*:

> "A person who was illegitimate whose parents intermarry and who is acknowledged by the father as the father's child is legitimate." 755 ILCS 5/2—2(h) (West 1994).

Section 212(c) of the Marriage Act, also cited by the plaintiff in his petition to amend, provides that "[c]hildren born or adopted of a prohibited or common law marriage are legitimate." 750 ILCS 5/212(c) (West 1994). Like section 2—2(h) of the Probate Act and section 212(c) of the Marriage Act, section 303 of the Marriage Act provides:

> "Children born or adopted of a marriage declared invalid are legitimate. Children whose parents marry after their birth are legitimate." 750 ILCS 5/303 (West 1994).

On the basis of the foregoing provisions, the plaintiff argued that the decedent died as a legitimate child by virtue of the bigamous marriage of her parents, which took place after her birth, and that, therefore, her paternal relatives were entitled to participate with the maternal relatives in the distribution of her intestate estate.

The independent administrator of the decedent's estate, Jacqueline Bartolini (hereinafter referred to as the defendant), filed a response to the plaintiff's petition to amend the trial court's order declaring heirship. In her response, the defendant argued that the statutory sections cited by the plaintiff were irrelevant because the decedent was not "born of" a prohibited or invalid marriage, as

---

[1]Although neither the trial court nor the parties specifically refer to these statutory provisions, it is apparent that the difference under these statutes between the intestate succession to the estates of illegitimate children and the intestate succession to the estates of legitimate children is at the center of this dispute.

provided by sections 212(c) and 303 of the Marriage Act, but, rather, was born prior to an invalid marriage, out of wedlock. Moreover, the defendant argued that that invalid marriage did not legitimate the decedent under either section 303 of the Marriage Act or section 2—2(h) of the Probate Act, because, she urged, those statutory sections contemplate that only valid marriages would legitimate a child born out of wedlock. Therefore, defendant urged, only the decedent's maternal heirs were entitled to participate in the distribution of her intestate estate.

In its written order denying plaintiff's petition, the trial court stated:

"[T]he attempted marriage between George W. Enke and Violet B. Stott subsequent to the birth of the Decedent did not legitimate the Decedent because George W. Enke had not been divorced from his first wife, and George W. Enke predeceased his first wife."

DISCUSSION

The parties agree that the sole issue on appeal is whether a child born out of wedlock, whose parents subsequently enter into an invalid marriage, is thereby legitimated for the purpose of determining heirship. Plaintiff contends that sections 212(c) and 303 of the Marriage Act, when read together, must lead us to the conclusion that an invalid marriage operates to legitimate a child born out of wedlock. Plaintiff further argues that Illinois public policy favors this interpretation and the legitimation which it fosters. Although there are no Illinois decisions explicitly on point, plaintiff also contends that there is persuasive authority from other states whose courts have interpreted statutes essentially identical to sections 212(c) and 303 of the Marriage Act under similar circumstances in favor of legitimacy. For the reasons which follow, we agree with the plaintiff's position.

Since the enactment of the modern legitimating statutes (755 ILCS 5/2—2(h); 750 ILCS 5/212, 303 (West 1994)), neither the Illinois courts nor the legislature has directly addressed the question of whether invalid marriages will serve to legitimate children born out of wedlock. As noted, the legitimating statutes themselves merely provide that a child born of an invalid marriage is legitimate (750 ILCS 5/212(c), 303 (West 1994)), and that a child born out of wedlock becomes legitimate when his parents marry each other (750 ILCS 5/303; 755 ILCS 5/2—2(h) (West 1994)). However, these statutes do not address whether an invalid marriage will suffice to legitimate a child born out of wedlock. In other words, whether the terms "marry" or "intermarry" as used in these legitimating statutes encompass invalid marriages remains undefined.

Accordingly, the Illinois decisions in *Miller v. Pennington*, 218 Ill. 220, 75 N.E. 919 (1905), and *Peirce v. Peirce*, 379 Ill. 185, 39 N.E.2d 990 (1942), which the plaintiff has cited, are not helpful, since each of those cases involved children born out of wedlock who were legitimated through a subsequent valid marriage by their parents. In each of those cases, the provisions in the legitimating statutes providing for the legitimation of children born out of wedlock were properly invoked. However, in each of those cases, there was a legally valid subsequent intermarriage. Unlike here, those cases did not address whether a subsequent invalid marriage would legitimate a child under section 303 of the Marriage Act (750 ILCS 5/303 (West 1994)) and section 2—2(h) of the Probate Act. 755 ILCS 5/2—2(h) (West 1994).

Correspondingly, the Illinois decisions in *Krupp v. Sackwitz,* 30 Ill. App. 2d 450, 174 N.E.2d 877 (1961), *In re Estate of Karas*, 21 Ill. App. 3d 564, 315 N.E.2d 603 (1974), and *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 510 N.E.2d 1208 (1987), which the defendant has cited, are similarly nonedifying. Both *Krupp* and *Estate of Karas* involved children born out of wedlock whose attempts to inherit from their fathers was rejected. However, both *Krupp* and *Estate of Karas* involved circumstances in which no subsequent marriage took place between the parents of the children born out of wedlock, much less an invalid marriage. Similarly, in *Dotson*, where the court rejected the claim by the father of a child born out of wedlock seeking to inherit from that child, the child was never legitimated since, as in *Krupp* and *Estate of Karas*, there was no subsequent intermarriage as required by statute.

Defendant also purports to cite to the Illinois decisions in *Sparling v. Industrial Comm'n*, 48 Ill. 2d 332, 270 N.E.2d 411 (1971), *Jardine v. Jardine*, 291 Ill. App. 152, 9 N.E.2d 645 (1937), *Whyte v. Estate of Whyte*, 244 Ill. App. 3d 746, 614 N.E.2d 372 (1993), and *Fuhrhop v. Austin*, 385 Ill. 149, 52 N.E.2d 267 (1943). However, none of these cases addresses the issue in the instant case of whether an invalid marriage will legitimate a child born out of wedlock, and consequently, they are irrelevant to our disposition. The decision in *Sparling* did not involve illegitimacy, but, rather, the right of a woman to inherit from her deceased putative husband, to whom she was bigamously and, consequently, invalidly married. Similarly, the *Jardine* case did not involve illegitimacy but, rather, the contested annulment of a bigamous marriage, in which the court, after finding that the marriage was indeed bigamous, stated that such a marriage is good "for no legal purpose." *Jardine*, 291 Ill. App. at 161, 9 N.E.2d at 649. Likewise in *Whyte*, the court did not address the question of

legitimacy but, rather, the validity of a bigamous marriage after its impediments were removed. Lastly, in *Fuhrhop*, although the question of legitimacy was before the court, that case did not involve any issue of whether children were legitimated by a subsequent marriage of any nature, but, rather, simply stated that under the common law, children born of an invalid marriage are considered to be illegitimate in the absence of any legislative remediation of that rule.

Both parties cite to the Illinois Supreme Court case of *Robinson v. Ruprecht*, 191 Ill. 424, 61 N.E. 631 (1901), in support of their respective positions. In *Robinson*, the court considered, *inter alia*, whether children born out of wedlock were subsequently legitimated by the bigamous marriage of their parents when the prior spouses of their parents later died. In construing a preexisting Illinois statute which provided that children born out of wedlock could be legitimated by the intermarriage of their parents (Ill. Rev. Stat. 1899, ch. 39, par. 3), the *Robinson* court held that once the impediments to the invalid marriage were removed, the marriage became valid and the children legitimate.

In the instant case, the plaintiff cites to *Robinson* to show that even a subsequent invalid marriage may legitimate children born out of wedlock. In contrast, defendant cites to *Robinson* in support of her contention that only where the impediments of a subsequent invalid marriage are removed will children born out of wedlock become legitimate. However, *Robinson* is not fully in point, because that case was decided prior to the 1925 enactment of the rule in Illinois that children of an invalid marriage are deemed to be legitimate without requiring the further removal of any impediments (Ill. Rev. Stat. 1925, ch. 89, par. 18 (now 750 ILCS 5/212(c), 303 (West 1994))). It is the impact of those later statutory enactments that we now must examine with respect to the scope of the terms "marry" and "intermarry" as deployed in those provisions.

However, while *Robinson* does not address the interplay of the relevant statutes presently enacted and in effect, it is helpful in providing a framework pursuant to which the modern legitimation statutes should be interpreted. In that regard, the *Robinson* court recognized the value of the legitimation statute there at issue in relieving otherwise illegitimate children of the harsh common law rule that they were kin of no one and could not, therefore, inherit from anyone or pass their intestate estates to anyone but their blood relatives. The court criticized the common law rule, stating as follows:

> "The rule visited the sins of the parents upon the unoffending offspring, and could not long survive the truer sense of justice and

broader sense of charity that came with the advancing enlightenment and civilization of the race.

[The legitimating statutes] were enacted for the purpose of obviating the undue severity of the common law and of erecting a rule more consonant with justice to an innocent and unfortunate class. *** The child of such parents [whose marriage was invalid at the time of their child's birth] is not less innocent or unoffending than the child of parents who were unmarried at the time of the copulation, and the ground upon which the insistence is based ***—that the child shall be punished for the sins of the parents,— shocks every sense of justice and right. The degree of moral or criminal delinquency of the parents does not enter into consideration in construing the section." *Robinson*, 191 Ill. at 433, 61 N.E. at 634.

See also *Miller*, 218 Ill. at 223, 75 N.E.. at 920 (stating that legitimation statutes are "more humane and just than the common law" insofar as they secure to the "innocent and unfortunate" child its natural inheritance rights); *Cardenas v. Cardenas*, 12 Ill. App. 2d 497, 140 N.E.2d 377 (1956) (stating that statute legitimating children of invalid marriage and children whose parents later marry is to be construed liberally to effectuate its benign, benevolent, and charitable humanitarian purposes).

As noted, while there are no Illinois decisions that deal specifically with the question at issue here, whether a subsequent, invalid marriage by the parents of a child born out of wedlock legitimates that child under the interplay of the various statutes now in effect, there are ample cases in other jurisdictions specifically dealing with that question. With respect to these cases, there appears to be a split of authority among the various states regarding the question presented here. See, on the one hand, *Rivieccio v. Bothan*, 27 Cal. 2d 621, 165 P.2d 677 (1946), *Bates v. Meade*, 174 Ky. 545, 192 S.W. 666 (1917), *Clinton County National Bank & Trust Co. v. Todhunter*, 43 Ohio App. 289, 183 N.E. 88 (1931), *In re Estate of Calogero*, 51 N.J. 345, 240 A.2d 429 (1968), *Carroll v. Carroll*, 20 Tex. 731 (1858), and *Goodman v. Goodman*, 150 Va. 42, 142 S.E. 412 (1928), which align themselves with the plaintiff's position. See, on the other hand, *Adams v. Adams*, 154 Mass. 290, 28 N.E. 260 (1891), *People ex rel. Meredith v. Meredith*, 297 N.Y. 692, 77 N.E.2d 8 (1947), *In re Judicial Settlement of the Accounts of Proceedings of Gilbert*, 235 N.Y. 390, 139 N.E. 550 (1923), *Greenhow v. James' Ex'r*, 80 Va. 636 (1885), and *Popp v. Roth*, 9 Utah 2d 96, 338 P.2d 123 (1959), which appear to articulate the defendant's position.

Upon our review of these authorities, we find that the cases supporting plaintiff's position are more consistent with the remedial

nature of the Illinois legitimating statutes and with the public policy that those statutes serve as articulated by our supreme court. See *Robinson*, 191 Ill. 424, 61 N.E. 631. See also *Miller*, 218 Ill. 220, 75 N.E. 919; *Cardenas*, 12 Ill. App. 2d 497, 140 N.E.2d 377.

The cases of *Bates v. Meade*, 174 Ky. 545, 192 S.W. 666 (1917), and *Goodman v. Goodman*, 150 Va. 42, 142 S.E. 412 (1928), are in point. In *Bates*, two children were born prior to an invalid marriage, and three were later born of that invalid marriage. Like sections 212(c) and 303 of the Marriage Act, section 2098 of the Kentucky statutes provided that "the issue of an illegal or void marriage shall be legitimate." Ky. Stat. § 2098 (1917). Moreover, like section 303 of the Marriage Act and section 2—2(h) of the Probate Act of 1975, section 1398 of the Kentucky statutes stated as follows:

> "[I]f a man having had a child by a woman shall afterwards marry her, such child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate." Ky. Stat. § 1398 (1917).

After reading sections 2098 and 1398 of the Kentucky statutes together, the *Bates* court held that the term "marry" in section 1398 encompassed both valid and invalid marriages and that, therefore, the void marriage of the parents in that case operated to legitimate the children born prior to that marriage. For its reasons, the *Bates* court stated as follows:

> "Turning now to sections 1398 and 2098, it will be seen that they provide for two different states of case—one when the child is born before the marriage takes place; the other when it is the offspring of a void marriage. But in both sections the legislative intent was the same—to save the children from illegitimacy if a marriage was solemnized between the parties ***. If, then, it be conceded, as it must be under the plain letter of section 2098, that the issue of a void marriage shall be legitimate, we perceive no sound reason why this legitimating principle should not be read into section 1398 so as to make legitimate children of the parties born before the marriage, although their marriage was prohibited by law and the offender against the bigamy statute guilty of a felony." *Bates*, 174 Ky. at 192 S.W. at 671.

In *Goodman*, as in *Bates* and the instant case, the same issue was involved under similar remediating statutes. There, the Virginia Supreme Court of Appeals concluded that the statutory legitimation of a child by subsequent intermarriage "was intended to include every marriage, valid or void, entered into in accordance with the forms and ceremonies of the law," where the Virginia statutes also provided that children of void marriages were legitimate. *Goodman*, 150 Va. at 45, 142 S.E. at 413. In so holding, the *Goodman* court

noted that the purpose of the enactment of these legitimating statutes was "to remove the stain and disabilities of bastardy from all 'innocent and unoffending' children who, for any cause, might be classed as illegitimate." *Goodman*, 150 Va. at 45, 142 S.E. at 413. See *Todhunter*, 43 Ohio App. 289, 183 N.E. 88 (void marriage legitimated child born out of wedlock under statute essentially the same as the Illinois statutes at issue here); *Carroll*, 20 Tex. 731 (void marriage legitimated child born out of wedlock under statutes essentially the same as the Illinois statutes at issue here). See also *Rivieccio*, 27 Cal. 2d 621, 165 P.2d 677 (a child born out of wedlock was legitimated by the subsequent valid marriage of his parents, although that marriage was later declared void upon the annulment of the father's divorce from his first wife, under statutes essentially the same as the Illinois statutes at issue here); *Calogero*, 51 N.J. 345, 240 A.2d 429 (void marriage legitimated child born out of wedlock under statutes essentially the same as the Illinois statutes at issue here, but term "marry" read broadly because amended statute substituted term "marry" for formerly narrower term "lawful wedlock" used in prior statute).

■ Here, too, as in each of the foregoing out-of-state decisions, because neither "marry" nor "intermarry" is defined in the relevant Illinois statutes (755 ILCS 5/2—2(h); 750 ILCS 5/212, 303 (West 1994)), we see no sound reason to treat the issue of an invalid marriage as legitimate under sections 212(c) and 303 of the Marriage Act, and yet to treat their siblings born prior to that same invalid marriage as illegitimates under section 303 of the Marriage Act and section 2—2(h) of the Probate Act. See *Bates*, 174 Ky. 545, 192 S.W. 666; *Goodman*, 150 Va. 42, 142 S.E. 412. See also *Rivieccio*, 27 Cal. 2d 621, 165 P.2d 677; *In re Estate of Calogero*, 51 N.J. 345, 240 A.2d 429; *Todhunter*, 43 Ohio App. 289, 183 N.E. 88; *Carroll*, 20 Tex. 731. Rather, giving full reflection to the interplay between the legitimating statutes in Illinois, which provide specifically for the legitimation of children born out of wedlock through subsequent marriage (750 ILCS 5/303; 755 ILCS 5/2—2(h) (West 1994)), and which provide that the offspring of an invalid marriage are nevertheless legitimate (750 ILCS 5/212(c), 303 (West 1994)), we find merit in the position urged by the plaintiff. As noted, this position would also more fully implement the remedial nature of these legitimating statutes and the articulated public policy that they serve. See *Robinson*, 191 Ill. 424, 61 N.E. 631. See also *Miller*, 218 Ill. 220, 75 N.E. 919; *Cardenas*, 12 Ill. App. 2d 497, 140 N.E.2d 377.

We also note that most of the out-of-state cases which seem to favor the defendant's position reach their results without providing any cogent rationale in support thereof. See, *e.g., Adams*, 154 Mass.

290, 28 N.E. 260 (holding without discussing its rationale that under California's legitimation statutes only a valid marriage would legitimate child born out of wedlock); *Meredith*, 297 N.Y. 692, 77 N.E.2d 8 (holding without discussion that legitimating statute like those at issue here require valid marriage to legitimate child born out of wedlock); *Popp*, 9 Utah 2d 96, 338 P.2d 123 (interpreting without discussion legitimating statutes like those at issue here to require valid marriage to legitimate child born out of wedlock). In *Greenhow*, 80 Va. 636, where Virginia's highest court refused to legitimate a child born out of wedlock of a racially mixed couple whose subsequent marriage violated Virginia's anti-miscegenation statute, one cannot escape the conclusion that the underlying rationale in that decision was predicated on the racially biased analysis that was in currency at that time. Moreover, the case of *In re Moncrief's Will*, 235 N.Y. 390, 139 N.E. 550, to which the defendant refers, is also distinguishable. Although the court in that case adhered to the rationale that an invalid marriage will not legitimate children born out of wedlock, the facts in that case involved a subsequent marriage that was ultimately annulled.[2]

In any event, for the reasons already stated, even if those out-of-state cases upon which the defendant relies were not otherwise vulnerable, we would favor the position of those out-of-state cases cited by the plaintiff. See *Bates*, 174 Ky. 545, 192 S.W. 666; *Goodman*, 150 Va. 42, 142 S.E. 412. See also *Rivieccio*, 27 Cal. 2d 621, 165 P.2d 677; *Todhunter*, 43 Ohio App. 289, 183 N.E. 88; *Calogero*, 51 N.J. 345, 240 A.2d 429; *Carroll*, 20 Tex. 731. Those cases better reflect the intent of our legislature as manifest from the interplay between the various modern legitimation statutes which are presently in force and most consistent with their remedial purpose and the public policy which they were enacted to implement. See *Robinson*, 191 Ill. 424, 61 N.E. 631. See also *Miller*, 218 Ill. 220, 75 N.E. 919; *Cardenas*, 12 Ill. App. 2d 497, 140 N.E.2d 377.

---

[2]In addition, defendant cites to several additional out-of-state cases that are factually not in point. See *Irving v. Irving*, 152 Ga. 174, 108 S.E. 540 (1921), and *Glass v. Glass*, 114 Mass. 563 (1874) (which do not deal with legitimation, but simply with bigamous marriages). See also *Hobby v. Burke*, 227 F.2d 932 (5th Cir. 1955) (legitimation case involving child born out of wedlock but not involving any subsequent intermarriage); *Evatt v. Mier*, 114 Ark. 84, 169 S.W. 817 (1914) (legitimation case involving children born of an invalid marriage, but not involving any subsequent intermarriage). But see *Lathan v. Edwards*, 121 F.2d 183 (5th Cir. 1941) (legitimation case involving child born out of wedlock, but decided under a Louisiana statutory scheme wholly different and divergent from that which is in force in Illinois).

The defendant would further urge that by interpreting the terms "marry" and "intermarry" to encompass invalid marriages, we are in effect performing a legislative function. We disagree. The intention of the legislature is to be derived from the manifest intent of an enactment as a whole (*Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 629 N.E.2d 842 (1994)), and courts must avoid interpretations of statutory language that are so literal or so overly broad that they fail to give effect to the purpose which the legislature intended. *In re Petition of K.M.*, 274 Ill. App. 3d 189, 653 N.E.2d 888 (1995). As already discussed, the Illinois legitimation statutes are remedial in nature and require liberal construction to protect illegitimates. See *Robinson*, 191 Ill. 424, 61 N.E. 631. See also *Miller*, 218 Ill. 220, 75 N.E. 919; *Cardenas*, 12 Ill. App. 2d 497, 140 N.E.2d 377. In the instant case, we are not asked to amend or enlarge the statutes at issue, as defendant would urge, but, rather, to implement them in a manner which would best reflect the expressed intent of the legislature.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

COUSINS and HOURIHANE, JJ., concur.